528 A.2d 222

**Katherine FALLARO, Appellant,**

v.

**Marie YEAGER Bucks County Children and Youth Social Services Agency.**

Superior Court of Pennsylvania.

Argued March 25, 1987.

Filed July 1, 1987.

William A. Meehan, Jr., Haverford, for appellant.

Paul W. Rauer, Philadelphia, for appellee.

Andrew F. Schneider, Schneider and Goldblum, Langhorne, for amicus curiae Bucks County Children and Youth Social Services Agency.

Before CAVANAUGH, BROSKY and TAMILIA, JJ.

TAMILIA, Judge:

This appeal is from an Order directing the Bucks County Children and Youth Agency to take custody of Robert and Michael Rennie, for dispositional purposes, so that a foster home can be found for the children in Bristol, Pennsylvania.

A summary of the facts as found by the lower court indicates that Marie Yeager is the natural mother of the boys, aged seven and five. Katherine Fallaro is the aunt by marriage of Ms. Yaeger.

The boys have lived in the Fallaro home for most of their lives. Initially, Ms. Yeager also lived at the home, but in February of 1984 she moved, along with her sons, to live with Mark Ercolani, who is now her husband. Sometime in June, 1984, the boys were again living with the Fallaro's, the circumstances of their return being in dispute.

On June 29, 1984, Mrs. Fallaro filed a petition for confirmation of custody and on July 5, 1985, Ms. Yeager filed a petition for custody. The petitions were consolidated and temporary custody was granted to Mrs. Fallaro pending a full hearing. Following two hearings, Mrs. Fallaro was granted temporary custody and Ms. Yeager given visitation rights. An investigation of Yeager's home was also ordered.

Mrs. Fallaro, on May 21, 1985, filed an emergency petition alleging Mr. Ercolani had sexually abused the children and requesting the visitation rights be vacated. The visitation rights were subsequently suspended pending a hearing, but Yeager was permitted to visit the children at the Fallaro home in the presence of Mrs. Fallaro.

On June 6, 1985, Ms. Yeager filed a petition for contempt and an emergency petition for reconsideration of the temporary Order. A hearing was scheduled, but the parties failed to appear. The matter was subsequently assigned to the judge whose Order is presently at issue and, after numerous continuances, a hearing was held May 15, 1986. An Order was then entered granting Fallaro and Yeager shared legal custody and providing that the boys would continue living with Fallaro, the mother to have unlimited visitation. The court notes in its Opinion that this Order was entered with a view toward reuniting the boys with their mother.

Ms. Yeager filed a petition for contempt on June 11, 1986 alleging Mrs. Fallaro interfered with her visitation rights.

Following a hearing on July 10, 1986, the court found Mrs. Fallaro to be in contempt of the May 15, 1986 Order. An Order was entered specifying Ms. Yeager's rights of visitation and requiring that a third adult be present if they were in the company of Mr. Ercolani. This Order was to be reviewed in sixty days.

A review hearing was conducted on September 10, 1986 following which the court made findings of fact and issued an Order. In the findings of fact, the court stated:

.    .    .    .    .

5. Mrs. Fallaro is an inappropriate caretaker for the children because she has demonstrated a longstanding and fixed hositility towards the mother and a preference for the father. This atmosphere is detrimental to the welfare of the children.

6. At this time Mrs. Ercolani [Yeager] is an inappropriate caretaker. Further investigation may prove that she can be an appropriate caretaker.

.    .    .    .    .

8. The children are dependent. They are now living on welfare. Their natural father has never supported them, although he is financially able to do so.

9. It is in the best interests of the children that they be placed with a caretaker who is not involved in the disputes between mother and father.

10. Because the mother, who seeks custody of the children and who has been denied visitation by Mrs. Fallaro on her own initiative and in contempt of the orders of this Court, is a resident of Bristol, Pennsylvania, it is in the best interests of the children that they reside in Bristol, Pennsylvania where the mother can have frequent visitation. . . .

Findings of Fact, Forer, J., 9/10/86.

The accompanying Order, which is the subject of the present appeal, provided:

## ORDER

The Bucks County Children and Youth Agency is directed to take custody of the children for dispositional purposes in order that an appropriate foster home can be found for the children in Bristol, Pennsylvania. The Bucks County Children and Youth Agency is directed to arrange for placement of the children and to schedule a hearing as soon as possible.

The Philadelphia Sheriff's Office is Ordered to transport the children to Bucks County to be present at the hearing. Counsel, Mr. Meehan and Mr. Rauer, will be notified and see to it that the children are made available.

Order, Forer, J., 9/10/86.

An appeal to the above Order was taken by Mrs. Fallaro and an Amicus Curiae brief filed by the Bucks County Children and Youth Social Services Agency.[1]

The amicus curiae brief raises the issue of whether it was proper for the court to make a finding of dependency in a case brought before it on the issue of custody. We think the court's action in making such a determination was improper and the Order must be vacated. This conclusion is based on a reading of the statutes involved and a concern for the violation of rights which would occur if such a practice is permitted.

The present matter was before the lower court on cross-petitions for custody. There was no petition for dependency filed, and yet the court, sua sponte, made such a determination. This Court, in *In Interest of M.B.*, 356 Pa.Super. 257, 514 A.2d 599 (1986), disapproved of a lower court making a dependency determination when a petition was filed under the Child Protection Services Law, 11 P.S. § 2201 *et seq.* In that case, the Court found the allegation of abuse to be unfounded but determined that the child was a dependent under the Juvenile Act, 42 Pa.C.S.A. §§ 6301–6365. As the Court stated in *M.B.:*

1. A motion for stay was granted by this Court on November 10, 1986.

Courts cannot rule on matters not before them. It is, of course, the pleadings which limit the court's agenda. 'The pleadings determine the issues in any given case.' *Anflick v. Gruhler,* 353 Pa. 470, 472, 46 A.2d 161, 162 (1946). '[A] plaintiff cannot file a complaint which avers one cause of action, and be permitted, on the trial, to prove a different cause of action.' *Smith v. County of Allegheny,* 397 Pa. 404, 406, 155 A.2d 615, 616 (1959).

The rationale for this rule goes well beyond Nineteenth Century hypertechnical pleading requirements.

The general rule requiring conformity between the allegata and probata is intended to avoid the injuries that would result by confronting a defendant at trial with proof of a cause of action of which he was not put on notice and which he is not prepared to defend.

*Computer Print Systems, Inc. v. Lewis,* 281 Pa.Super. 240, 248, 422 A.2d 148, 152 (1980).

Due process requires that the litigants receive notice of the issues before the court and an opportunity to present their case in relation to those issues. It is even more eggregious an error when the lack of notice, through variance from the pleadings, is the court's doing. For when the issue is first stated only in the court's resolution of it, the unsuspecting party has no opportunity during the proceedings to voice his objections or match his case to the altered issue.

*In Interest of M.B., supra,* 356 Pa.Superior Ct. at 259–260, 514 A.2d at 600–601.

The Court went on to review the various sections of the statute, specifically discussing 42 Pa.C.S.A. § 6321:

We note Section 6321 is also the first section of Subchapter B of the Juvenile Act which is entitled "JURISDICTION AND CUSTODY." We think it clear from this fact and from our reading of § 6321 that if a proceeding is not commenced by any of the means provided by § 6321, then a court has no jurisdiction to find a child to be dependent.

Thus, aside from the other means provided by § 6321, in order for a court to have jurisdiction to find a child to be dependent, there must be a petition filed under the Juvenile Act which alleges the dependency of the child. Since no such petition was filed in this case, the court below had no jurisdiction to find appellant's child to be a dependent child.

*In Interest of M.B., supra,* 356 Pa.Superior Ct. at 261–262, 514 A.2d at 602.

We think the rationale set forth by the Court in *In Interest of M.B.* is equally applicable to the present case. There are clear distinctions between a custody hearing and a dependency adjudication which must be preserved. A brief review of these differences will illustrate further the necessity of our holding in this case.

In a custody proceeding between the parents, the single question before the court is: what is in the child's best interest? Custody is awarded according to which parent can demonstrate, by a preponderance of the evidence, that the child's best interest would be served by placement with him or her. *In Re Custody of Hernandez,* 249 Pa.Super. 274, 376 A.2d 648 (1977); *Helsel v. Blair County Children and Youth Services,* 359 Pa.Super. 487, 519 A.2d 456 (1986).

The determination and burden of proof change somewhat if a third person is involved.

When the judge is hearing a dispute between the parents, or a parent, and a third party, the manner of inquiry is more complex. The question still is, What is in the child's best interest? However, the parties do not start out even; the parents have a "prima right to custody," which will be forfeited only if "convincing reasons" appear that the child's best interest will be served by an award to the third party. Thus, even before the proceedings start, the evidentiary scale is tipped, and tipped hard, to the parents' side. What the judge must do, therefore, is first, hear all evidence relevant to the child's best interest, and then, decide whether the evidence on behalf of the third

party is weighty enough to bring the scale up to even, and down on the third party's side.

*Hernandez, supra,* 249 Pa.Super. at 286, 376 A.2d at 654. *See also Ellerbe v. Hooks,* 490 Pa. 363, 416 A.2d 512 (1980).

A further distinction is the manner in which a custody action is to be pursued. This has been clearly established through statute and procedural rules. *See* 48 P.S. § 92; 42 Pa.C.S.A. § 5341 *et seq.;* Pa.R.C.P. 1915.1–1915.25.

A dependency determination is completely governed by statute. Initially, the Juvenile Act, 42 Pa.C.S.A. § 6301 *et seq.,* establishes the following purposes:

**§ 6301. Short title and purposes of chapter**

(a) **Short title.**—This chapter shall be known and may be cited as the "Juvenile Act."

(b) **Purposes.**—This chapter shall be interpreted and construed as to effectuate the following purposes:

(1) To preserve the unity of the family whenever possible and to provide for the care, protection, and wholesome mental and physical development of children coming within the provisions of this chapter.

(2) Consistent with the protection of the public interest, to remove from children committing delinquent acts the consequences of criminal behavior, and to substitute therefore a program of supervision, care and rehabilitation.

(3) To achieve the foregoing purposes in a family environment whenever possible, separating the child from parents only when necessary for his welfare or in the interests of public safety.

(4) To provide means through which the provisions of this chapter are executed and enforced and in which the parties are assured a fair hearing and their constitutional and other legal rights recognized and enforced.

1976, July 9, P.L. 586, No. 142, § 2, effective June 27, 1978.

The scope of the act is established in section 6303 wherein it states:

## § 6303. Scope of chapter

**(a) General rule.**—This chapter shall apply exclusively to the following:

(1) Proceedings in which a child is alleged to be delinquent or dependent.

(2) Transfers under section 6322 (relating to transfer from criminal proceedings).

(3) Proceedings arising under Subchapter E (relating to dispositions affecting other jurisdictions).

(4) Proceedings under the Interstate Compact on Juveniles, as set forth in section 731 of the act of June 13, 1967 (P.L. 31, No. 21), known as the "Public Welfare Code." [1]

**(b) Minor judiciary.**—No child shall be detained, committed or sentenced to imprisonment by a district justice or a judge of the minor judiciary.

The specific method of proceeding under the statute is set forth in sections 6321 and 6334 which provide in pertinent part:

## § 6321. Commencement of proceedings

**(a) General rule.**—A proceeding under this chapter may be commenced:

.    .    .    .    .

(3) In other cases by the filing of a petition as provided in this chapter. The petition and all other documents in the proceeding shall be entitled "In the interest of ..., a minor," and shall be captioned and docketed as provided by general rule.

.    .    .    .    .

## § 6334. Petition

A petition, which shall be verified and may be on information and belief, may be brought by any person including a law enforcement officer. It shall set forth plainly:

(1) The facts which bring the child within the jurisdiction of the court and this chapter, with a statement that it is in the best interest of the child and the public

that the proceeding be brought and, if delinquency is alleged, that the child is in need of treatment, supervision or rehabilitation.

.        .        .        .        .

The procedural aspects are further governed by sections 6336, 6341 and 6351 which provide for the conduct of hearings, the adjudication and disposition of a child found to be dependent. Section 6336 provides:

### § 6336. Conduct of hearings

(a) General rule.—Hearings under this chapter shall be conducted by the court without a jury, in an informal but orderly manner, and separate from other proceedings not included in section 6303 (relating to scope of chapter).

(b) Functions of district attorney.—The district attorney, upon request of the court, shall present the evidence in support of the petition and otherwise conduct the proceedings on behalf of the Commonwealth.

(c) Record.—If requested by the party or ordered by the court the proceedings shall be recorded by appropriate means. If not so recorded, full minutes of the proceedings shall be kept by the court.

(d) Proceeding in camera.—Except in hearings to declare a person in contempt of court, the general public shall be excluded from hearings under this chapter. Only the parties, their counsel, witnesses, and other persons accompanying a party for his assistance, and any other person as the court finds have a proper interest in the proceeding or in the work of the court may be admitted by the court. The court may temporarily exclude the child from the hearing except while allegations of his delinquency are being heard.

1976, July 9, P.L. 586, No. 142, § 2, effective June 27, 1978.

A clear and convincing standard of proof is established in section 6341 which states in pertinent part:

### § 6341. Adjudication

(a) General rule.—After hearing the evidence on the petition the court shall make and file its findings as to

whether the child is a dependent child, or if the petition alleges that the child is delinquent, whether the acts ascribed to the child were committed by him. If the court finds that the child is not a dependent child or that the allegations of delinquency have not been established it shall dismiss the petition and order the child discharged from any detention or other restriction theretofore ordered in the proceeding.

.     .     .     .     .

(c) Finding of dependency.—If the court finds clear and convincing evidence that the child is dependent, the court shall proceed immediately or at a postponed hearing, which shall occur not later than 20 days after adjudication if the child has been removed from his home, to make a proper disposition of the case.

See also In Interest of Leslie H., 329 Pa.Super. 453, 478 A.2d 876 (1984).

Finally, the alternatives available to the court following a determination of dependency are spelled out in section 6351.

§ 6351. Disposition of dependent child

(a) General rule.—If the child is found to be a dependent child the court may make any of the following orders of disposition best suited to the protection and physical mental, and moral welfare of the child:

(1) Permit the child to remain with his parents, guardian, or other custodian, subject to conditions and limitations as the court prescribes, including supervision as directed by the court for the protection of the child.

(2) Subject to conditions and limitations as the court prescribes transfer temporary legal custody to any of the following:

(i) Any individual resident within or without this Commonwealth who, after study by the probation officer or other person or agency designated by the court, is found by the court to be qualified to receive and care for the child.

(ii) An agency or other private organization licensed or otherwise authorized by law to receive and provide care for the child.

(iii) A public agency authorized by law to receive and provide care for the child.

(3) Without making any of the foregoing orders transfer custody of the child to the juvenile court of another state if authorized by and in accordance with section 6363 (relating to ordering foreign supervision).

**(b) Limitation on confinement.**—Unless a child found to be dependent is found also to be delinquent he shall not be committed to or confined in an institution or other facility designed or operated for the benefit of delinquent children.

. . . . .

A reading of the statute makes clear the difference between the question to be determined in a dependency hearing and that in a custody hearing.

The statute, in section 6302, defines a dependent child in the following manner:

**§ 6302.  Definitions**

. . . . .

**"Dependent child."**   A child who:

(1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals;

(2) has been placed for care or adoption in violation of law;

(3) has been abandoned by his parents, guardians, or other custodian;

(4) is without a parent, guardian, or legal custodian;

(5) while subject to compulsory school attendance is habitually and without justification truant from school;

(6) has committed a specific act or acts of habitual disobedience of the reasonable and lawful commands of his parent, guardian or other custodian and who is ungov-

ernable and found to be in need of care, treatment or supervision;

(7) is under the age of ten years and has committed a delinquent act;

(8) has been formerly adjudicated dependent, and is under the jurisdiction of the court, subject to its conditions or placements and who commits an act which is defined as ungovernable in paragraph (6); or

(9) has been referred pursuant to section 6323 (relating to informal adjustment), and who commits an act which is defined as ungovernable in paragraph (6).

Thus the court must be convinced by clear and convincing evidence that the child fits into one of the categories established in section 6302 before it can adjudicate the child as dependent. It is only after this determination is made that the application of section 6351 comes into play and the best interest of the child is considered when the court makes a disposition.

One last section to examine is section 6337 which provides a right to counsel. This supports purpose number (4) in section 6301, *supra,* which establishes the desire of the legislature to ensure a fair hearing and the protection of constitutional rights.

### § 6337.  Right to counsel

Except as otherwise provided under this chapter a party is entitled to representation by legal counsel at all stages of any proceedings under this chapter and if he is without financial resources or otherwise unable to employ counsel, to have the court provide counsel for him. If a party appears without counsel the court shall ascertain whether he knows of his right thereto and to be provided with counsel by the court if applicable. The court may continue the proceeding to enable a party to obtain counsel. Counsel must be provided for a child unless his parent, guardian, or custodian is present in court and affirmatively waive it. However, the parent, guardian, or custodian may not waive counsel for a child when their interest may be in conflict with the interest or interests of

the child. If the interests of two or more parties may conflict, separate counsel shall be provided for each of them.

1976, July 9, P.L. 586, No. 142, § 2, effective June 27, 1978.

This section has been interpreted to impose a requirement that counsel be appointed in dependency adjudications. *In Interest of Theresa E.*, 287 Pa.Super. 162, 429 A.2d 1150 (1981); *Commonwealth ex rel. Grimes v. Yack*, 289 Pa.Super. 495, 433 A.2d 1363 (1981).

From this review of the Juvenile Act it is apparent that clear and convincing evidence must be presented to show the child is dependent as defined by the act. "The hearing judge should not ask what are the childs 'best interests' but whether the child is presently without proper care and if so, whether such care is immediately available." *In Interest of Theresa E., supra,* 287 Pa.Superior Ct. at 178, 429 A.2d at 1158, citing *In the Interest of Pernishek*, 268 Pa. super. 447, 458, 408 A.2d 872, 877 (1979). In contrast, a custody petition raises the singular issue of what is in the best interest of the child with the standard of proof varying depending upon the parties involved. *Hernandez, supra; Ellerbe, supra.*

The different questions to be addressed and the distinctive procedural mechanisms designed to adjudicate these issues make it mandatory that a court not be permitted to intermingle custody and dependency determinations. This Court has looked with disfavor on parties who sought to bring proceedings under the Juvenile Act as an alternative way to seek custody. *Yack, supra; Theresa E., supra.* Likewise, we have stressed the importance of bringing a dependency petition as opposed to a custody action when the forfeiture of parental rights is at issue. *Helsel, supra. See also In Interest of M.B., supra.*

The lower court here made a dependency determination without the procedural safeguards provided for by the Juvenile Act. A petition for dependency determination was never filed and the parties were proceeding solely on cross-

petitions for custody. In addition, the children were not provided with counsel as required by the statute. The rights of all the parties were thus substantially affected by the sua sponte determination of dependency.

In addition, the current thrust of child dependency actions is directed toward permanency planning. Pursuant to Public Law 96–272, June 17, 1980, Adoption Assistance and Child Welfare Act of 1980, the states are mandated to provide numerous services to families and children if they are to be eligible for federal matching funds for those services. Pennsylvania, through the Department of Welfare and the County Children and Youth Services offices, has fully implemented these services. Paramount to compliance is the requirement of due process and an appropriate judicial determination that removal of a child from his home was required. 55 Pa.Code § 3130.71(a). Prior to removal is the requirement that the agency make reasonable effort to prevent removal. 62 P.S. § 701 *et seq.;* 55 Pa.Code §§ 3130.11, 3130.13, 3130.35–3130.42. The federal and state law requires periodic court monitoring, which is the role of the Juvenile Court, 42 Pa.C.S. § 6351, 55 Pa. Code § 3130.71, and it also involves case plans for services for the child, parents and foster parents (55 Pa.Code § 3130.67) to: (1) improve conditions in the home (§ 3130.-67(6)(7)(8); and (2) facilitate child's return home or plan for permanent placement (§ 3130.61–67).

Ultimately, the goal is to rehabilitate the family, reunite the child with his family or, after reasonable efforts over an appropriate period of time have failed, to terminate parental rights and free the child for adoption pursuant to the Adoption Act of 1980, Subchapter B **Involuntary Termination,** 23 Pa.C.S.A. § 2511(a).

Thus it is clearly apparent that with the enormous social and legal implications involved in a finding of dependency, this can only be accomplished through the proceedings in Juvenile Court pursuant to a dependency petition, which calls into play the full panoply of services, safeguards and goals provided by federal and state laws and resources. No

matter how well intended the judge may be in a proceeding pursuant to an action for custody, national and state policy will not be followed and the law cannot operate to effectuate that policy.

In an addendum to the Opinion dated November 13, 1986, the lower court recognizes that dependency actions are governed by the Juvenile Act. The court concludes, however, that since the children have been supported by public assistance, they are wards of the state.

> Although a formal finding of dependency may not have been made at the time the boys were determined to be in need of public assistance, they were without proper subsistence as required by law, 42 Pa.C.S.A. § 6302(1) (Purdons 1981), and, therefore were dependent. This situation has not changed since the boys were placed with Fallaro because she has not provided financial support for them....

Addendum to Opinion dated November 13, 1986, Forer, J., pp. 1–2).

The lower court went on to further justify its actions by stating:

> To state that this Court is without jurisdiction to make a finding that the chidlren [sic] are dependent and then transfer custody would create an intolerable situation. Robert and Michael would be forced to remain in Fallaro's hostile, unstable home. The Commonwealth has a duty to protect and provide care for minor children. 42 Pa.C.S.A. § 6301(b)(i); see also *Davidyan v. Davidyan*, 229 Pa.Super. 495, 327 A.2d 139, 142 (1974); *Friedman v. Friedman*, 224 Pa.Super. 530, 535, 307 A.2d 292 (1973). This Court cannot ignore the fact that Robert and Michael are dependent and that their best interest and welfare require that they be transferred to a neutral, suitable foster home.

*Id.* at 2–3.

We must reject the court's rationale for several reasons. First, we think to equate the receipt of welfare payments with a finding of dependency is totally unwarranted. Al-

though a finding that a child is without subsistence would lend support to a determination of dependency, this is not to be construed in such a way so that receipt of public assistance equates with a lack of subsistence. In many instances, parents may be forced to rely upon public assistance as the sole means of support for themselves and their children. To rely on this fact, as the reason for finding a child dependent, could result in thousands of children being declared dependent upon proper petition for that reason alone.

The court's concern with the welfare of the children is recognized, but we do not think this justifies an otherwise improper action. We agree with the brief of the amicus curiae that to allow such an action would set an undesirable precedent. Courts, when faced with a bitterly contested custody dispute, where the animus of the parties negatively affects the best interest of the children, could place the children in the child welfare system and avoid making the decision. In such instances, the children would be isolated from their families, the agencies burdened with an increased caseload and the ultimate resolution of the problem only postponed.

We hold that the courts must adhere to the procedures developed for resolution of the various problems which arise concerning the welfare of children. There are distinct methods established to determine custody and dependency because different issues are before the court and various interests must be protected. The standards of proof and rights of the parties vary depending upon the type of proceeding. It is clearly improper for a court to bypass the procedures and safeguards established to protect these rights by invoking the "best interest of the child." Absent a dependency petition, the court is without jurisdiction to make a determination. *In Interest of M.B., supra.* The Order must thus be vacated and the case remanded. Unless a dependency petition is filed, the court must rule on the custody petitions filed by the parties. Jurisdiction relinquished.