555 A.2d 123

In the Interest of S.A.D., A Minor,

**Appeal of K.D., a Minor, Appellant, Monroe County Children & Youth.**

Superior Court of Pennsylvania.

Argued Sept. 13, 1988.

Filed Jan. 20, 1989.

Reargument Denied March 9, 1989.

Janet J. Siracus, Assistant Public Defender, Stroudsburg, for appellant.

Mark L. Newman, Assistant Public Defender, Stroudsburg, for appellee.

Before OLSZEWSKI, DEL SOLE and JOHNSON, JJ.

JOHNSON, Judge:

In this dependency action, we consider for the first time the obligation of the Commonwealth to promote family stability and to preserve the family unit pursuant to Public Law 96–272, June 17, 1980, the Adoption Assistance and Child Welfare Act of 1980. Under this Act the state is entitled to matching funds when it complies with federal requirements to make reasonable efforts to maintain the family unit when it temporarily or permanently removes the child from the home. In our Commonwealth, the services required by the federal act are implemented through the Department of Public Welfare and the County Children and Youth Services. In the present case, Monroe County Children and Youth Services (CYS) had a greater concern with the protection of their funding than the implementation of

their responsibility to stabilize and protect the family unit of this young mother and her child. With regard to participation in the federal program, we have stated: Paramount to compliance is the requirement of due process and an appropriate judicial determination that removal of a child from his home was required. 55 Pa.Code § 3130.71(a). Prior to removal is the requirement that the agency make reasonable effort to prevent removal. 62 P.S. 701 *et seq.;* 55 Pa.Code §§ 3130.11, 3130.13, 3130.35–.42. The federal and state law requires periodic court monitoring which is the role of the Juvenile Court, 42 Pa.C.S. § 6351, 55 Pa. Code § 3130.71, and it also involves case plans for services for the child, parents and foster parents (55 Pa.Code § 3130.67) to: (1) improve conditions in the home (§ 3130.-67(6)(7)(8); and (2) facilitate the child's return home or plan for permanent placement (§ 3130.61–67).

Ultimately, the goal is to rehabilitate the family, reunite the child with his family or, after reasonable efforts over an appropriate period of time have failed, to terminate parental rights and free the child for adoption pursuant to the Adoption Act of 1980, Subchapter B, Involuntary Termination, 23 Pa.C.S. § 2511(a).

*Fallaro v. Yeager,* 364 Pa.Super. 408, 422, 528 A.2d 222, 229 (1987).

These requirements are not mere formalities:

[I]t is clearly apparent that with the enormous social and legal implications involved in a finding of dependency, this can only be accomplished through the proceedings in Juvenile Court pursuant to a dependency petition, which calls into play the full panoply of services, safeguards and goals provided by federal and state laws and resources.

*Fallaro v. Yeager,* 364 Pa.Super. at 422, 528 A.2d at 229 (1987).

Here, finding that the agency has neither made reasonable efforts to keep this family together nor presented evidence probative of dependency, we reverse and remand.

The facts of this case may be stated as follows: On January 21, 1988, K.D., an eighteen year old unwed mother, went to the office of the Monroe County Children and Youth Services in Stroudsburg, Pennsylvania and requested assistance. Mother and her fourteen month old daughter, S., born November 25, 1986, had no money and no place to stay. Mother was advised that her only alternative was to "voluntarily" place her child in the custody of CYS until she could find a place to stay. She was told by the agency to "get herself together and find a place [to stay] and get some employment so she could have her daughter back." (N.T. 2/16/88 at 10.)

The regulations promulgated under 55 Pa.Code § 3130.65 require that a voluntary agreement may only be effective for 30 days and *must* contain a statement that the parent has a right to be represented by legal counsel, has a right to refuse to place the child and must contain a statement that the parent has a right to visit the child, to be consulted with respect to all medical or educational decisions and that the parent has the right to the immediate return of the child upon request unless the court orders the legal custody of the child to be transferred to the agency. As CYS has neither attached a copy of the voluntary agreement, stated why it was not accessible, nor set forth the provisions, we need not consider the voluntary agreement. Pa.R.C.P. 1019(h); *see Judges v. County of Washington*, 120 Pa. Cmwlth. 283, 289, 548 A.2d 1306, 1309 (1988). In view of our disposition, we do not address the failure of CYS to attach a copy of the "voluntary" agreement to the dependency petition when the surrender of a fundamental constitutional right is at issue.

In early February, Mother requested the return of her child. This request was denied by the agency. On February 16, 1988, the date of the hearing, Mother had been continuously requesting the return of her child for two weeks, was employed, earning $3.60 per hour, and was residing with the family of a friend. The stated reason for CYS's refusal to return the child was that Mother needed to

find a place where she could "be on her own" and have "her own place to live". (N.T. 2/16/88 at 11–12.) The sole testimony at the dependency hearing was that of a CYS caseworker who repeatedly testified that Mother should find a more suitable place to live but acknowledged that neither she nor any other caseworker had visited the home where Mother was then living. The caseworker acknowledged that it was obvious that Mother could not afford a place of her own based on her minimal earnings but insisted that Mother find a more suitable place to live. N.T. 2/16/88 at 15–16.

On the basis of this testimony, the trial court not only made an initial determination of dependency but also made a specific finding that reasonable efforts were made by Monroe County CYS to prevent the placement. Counsel for CYS had requested such a finding:

[F]or funding and State administrative reasons, we're required to proceed and present petitions in matters of this type, and what we're requesting is a standard type of disposition, which is a finding of dependency which protects our funding and provides for proper state funding. It provides for placement with the agency and review at any time by any interested party.

N.T. 2/16/88 at 4–5.

■ Mother filed a Notice of Appeal on March 16, 1988. On March 9, 1988 the trial court had scheduled a hearing for March 23, 1988 on a petition for reconsideration. This was the same hearing date established in the order entered February 17, 1988.[1] The trial court conducted its review

1. Initially, CYS challenges the propriety of this appeal, contending that the appeal is premature, not being an appeal from a final order, because the February 17, 1988 Order specifically set March 23, 1988 as the date for a review hearing. Contrary to the contention of CYS, the hearing set by the February 17, 1988 Order was intended by the trial court to be a periodic placement review anticipated by the Juvenile Act. The February 17, 1988 Order of the trial court vested custody of the child in CYS *for appropriate placement* after determining the child to be dependent. The scheduling of such periodic reviews does not vitiate the finality of an adjudication of dependency which is accompanied by a disposition of the child. *See In Interest of C.A.M.,* 264

hearing, as scheduled, on March 23, 1988. Nothing in the certified record to this Court indicates that Mother received actual notice of this hearing. At that hearing, at which Mother did not appear, a CYS caseworker testified that Mother had changed her residence three times. The caseworker further testified that Mother had failed to appear for scheduled visits with the child. The trial court then entered an order confirming the order of February 17, 1988, and providing for court review at any time on motion of any interested party.

■ Mother maintains on appeal that CYS made no reasonable efforts to avoid the necessity of the child's placement in foster care. She also contends that the initial determination of dependency made by the trial court was not supported by clear and convincing evidence. Mother asserts that no history of abuse or neglect was shown, nor was any evidence presented to show that the minor child had been deprived of proper care during the time she was in the custody of her mother. Mother insists that even if a child is adjudicated dependent she may nonetheless not be separated from her parent unless the separation is clearly necessary. *In re Donna W.*, 284 Pa.Super. 338, 425 A.2d 1132 (1981). We agree.

The "clear necessity" standard is designed to ensure that family unity is "preserved whenever possible." 42 Pa.C.S. § 6301(b)(1) and (3). The Juvenile Act defines a dependent child as one who is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his or her physical, mental, or emotional health or morals. 42 Pa.C.S. § 6302. Whether a child is considered to be lacking proper parental care or control, for purposes of determining whether a child is a "dependent child" within the meaning of 42 Pa.C.S. § 6302, encompasses two discrete questions. It must first be ascertained if the child is "at this moment without proper parental care or control." If so, the court must then determine if

Pa.Super. 300, 399 A.2d 786 (1979). Hence no jurisdictional defect exists and this appeal was properly and timely filed.

such care or control is immediately available. *Matter of Yeager,* 309 Pa.Super. 491, 495, 455 A.2d 717, 719 (1983); *In the Interest of Anita H.,* 351 Pa.Super. 342, 346, 505 A.2d 1014, 1015 (1986).

■ The attorney for the minor child asserts that CYS failed to offer evidence probative of either question. He further argues that in this case there was no evidence before the trial court that separation of this mother from her child should have been considered in the first place. He correctly maintains that separation of a child from a parent, even if the child is adjudicated dependent, is improper absent a showing that the separation is clearly necessary. Clear necessity is established when the court determines that alternatives to separation are unfeasible. *In the Interest of Ryan Michael C.,* 294 Pa.Super. 417, 421, 440 A.2d 535, 536 (1982).

Counsel for the minor child urges that we vacate the trial court order and return his client to her mother. Quoting respectively from *Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972) and *Smith v. Organization of Foster Families for Equality and Reform,* 431 U.S. 816, 844, 97 S.Ct. 2094, 2110, 53 L.Ed.2d 14 (1977), he also forcefully reminds us that we are not only concerned with the Fourteenth Amendment interest that a parent has in the "companionship, care, custody and management of his or her children" but also with the often forgotten interest of the child in not being dislocated from the "emotional attachments which derive from the intimacy of daily association with the parent." Counsel for the minor child also raises a matter of public policy. He asks whether the decision of the trial court sends a dangerous message to young parents, who find themselves in temporary dire straits. The message being delivered, he suggests, is "Do not seek temporary assistance from Children and Youth Services. You will have trouble getting your child back."

■ The evidence supporting the finding of reasonable efforts consisted entirely of the following testimony by the case worker:

Q. What assistance has been provided?

A. Well, housing of her child, getting [Mother] hooked up with Community Services, providing her bus pass and things so she can come visit with her child, getting her hooked up with the Salvation Army, which in turn put her up in a motel for a short time. We have been working with her and encouraging her to get out to D.P.A., get on assistance, seek employment, and encouraging her to find her own place to live.

N.T. 2/16/88 at 10. The reasonable efforts requirement of the adoption Assistance and Child Welfare Act of 1980, PL 96-272 is twofold. First, states must include in their Title IV-E state plan a commitment that reasonable efforts will be made to prevent unnecessary placement of children in foster homes, and to return foster children to their homes. The relevant state plan requirement provides:

§ 671(a) In order for a State to be eligible for payments under this part, it shall have a plan approved by the Secretary which ...

(15) effective October 1, 1983, provides that, in each case, reasonable efforts will be made (A) prior to the placement of a child in foster care, to prevent or eliminate the need for removal of a child from his home, and (B) to make it possible for the child to return to his home.

42 U.S.C. § 671(a)(15) (1986). Second, for each child entering placement after October 1, 1983, there must be a judicial determination that reasonable efforts were made to prevent removal in order for the state to be eligible for federal foster care funds under Title IV-E. The state will be eligible only if:

The removal of the child from the home was the result of a judicial determination to the effect that ... reasonable efforts of the type described in section 671(a)(15) have been made.

42 U.S.C. § 672 (1986).

With the adoption of this legislation in 1980, Congress decided to shift the emphasis in federal programs toward providing preventive services to allow abused or neglected

children to remain at home with safety rather than being placed in foster care. The purpose of the reasonable efforts requirement was to insure that, prior to the expenditure of federal dollars for foster care, reasonable efforts will be made to prevent the need to place the child in foster care. In addition, reasonable efforts must be made after placement to reunite the family. A judicial determination of those efforts serves to closely examine, in the case of each individual child, whether reasonable efforts were made to keep the family intact. Congress also required that a state must establish preventive and reunification services for all children in foster care, including those voluntarily placed by a parent, in order to obtain maximum funding under the IV–B Child Welfare Service Program.

The federal regulations require each state to designate in a plan which preventive and reunification services are available. While every state is not required to provide a specific set of services, a list of suggested services is provided:

> (2) The services specified may include: twenty-four hour emergency caretaker, and homemaker services; day care; crisis counseling; individual and family counseling; emergency shelters; procedures and arrangements for access to available emergency financial assistance; arrangements for the provision of temporary child care to provide respite to the family for a brief period, as part of a plan for preventing children's removal from home; other services which the agency identifies as necessary and appropriate such as home-based family services, self-help groups, services to unmarried parents, provision of, or arrangements for, mental health, drug and alcohol abuse counseling, vocational counseling or vocational rehabilitation; and post-adoption services.

95 C.F.R. § 1357.15(e)(2) (1986).

Under the reasonable efforts requirement, agencies can be required to provide services that are normally the province of other agencies. Samuel B. Magdovitz with Lisa M. Colautti and Robert G. Schwartz, *A Guide to Judicial Decisions Affecting Dependent Children*, p. 11 (Juvenile

Law Center, Philadelphia: 1986). It has been suggested that trial courts:

[S]hould emphasize to the agency the high financial and psychological cost of maintaining a child in out-of-home care compared to the minimal cost of paying the family's initial rent, security deposit or utility bill.

The court should use the power it has under federal law to require the agency to provide services that are not routinely available or to forgo federal reimbursement for the cost of placement.

*Making Reasonable Efforts: Steps for Keeping Families Together,* published by the National Council of Juvenile and Family Court Judges, the Child Welfare League of America, the Youth Law Center and the National Center for Youth Law (no publication date) at 59.[2] This same publication also suggests that:

When the child welfare agency uses the services of other public agencies to meet its responsibility for making reasonable efforts, it should not simply refer families to other agencies and assume that the obligation has been met. Unless responsibility for a child's or family's case has clearly been delegated to the other agency and a mechanism for accountability has been established, the referring child welfare agency should retain responsibility for the case and for ensuring that the family receives the appropriate services.

*Id.* at 79.

The legislature has placed primacy on the right of parents to raise their own children and the desirability of children to be raised by their natural parents. In the present case, the onus was on CYS to address and support the claims in the dependency petition which it filed with clear and convincing evidence. This standard means that the testimony must be so direct and unambiguous so as to enable the trier of fact to come to a sure determination, without conjecture, of the

2. This publication is available without charge from The Youth Law Center, 1663 Mission Street, San Francisco, California 94103, (415) 543-3373.

truth of the exact facts at issue. *In re Frank W.D.*, 315 Pa.Super. 510, 462 A.2d 708 (1983).

Our review of the record reveals a very young, unwed mother, lacking financial resources and housing who was unemployed. The mother, in a responsible fashion, turned to CYS to obtain assistance to provide and care for her child. There is no evidence that this young mother in any way neglected or abused her child. CYS has failed to present clear and convincing evidence to establish dependency and has failed to make reasonable efforts to prevent the separation of the mother and child.

A fundamental purpose of the Juvenile Act is to preserve family unity whenever possible. The Act limits the Commonwealth's course of interference with the family unit to those cases where the parents have not provided a minimum standard of care for the child's physical, intellectual and moral well-being. *In Interest of Pernishek*, 268 Pa.Super. 447, 408 A.2d 872 (1979). It is well-settled that the Juvenile Act was not intended to provide a procedure to take the children of the poor and give them to the rich, nor to take children of the illiterate and crude and give them to the educated and cultured, nor to take the children of the weak and sickly and give them to the strong and healthy. *In re L*, 477 Pa. 322, 383 A.2d 1228 (1978), *cert. denied* 439 U.S. 880, 99 S.Ct. 216, 58 L.Ed.2d 192 (1979); *Stapleton v. Dauphin County Child Care Service*, 228 Pa.Super. 371, 324 A.2d 562 (1974); *In Interest of La Rue*, 244 Pa.Super. 218, 366 A.2d 1271 (1976); *In Interest of Black*, 273 Pa.Super. 536, 417 A.2d 1178 (1980); *Commonwealth ex rel. Grimes v. Yack*, 289 Pa.Super. 495, 433 A.2d 1363 (1981). Neither will this Court tolerate the separation of a young child from a parent to protect agency funding.

Finding that the decision of the trial court constitutes an abuse of discretion, we reverse the order entered February 17, 1988 declaring the minor child to be dependent and remand with instructions that the child is to be returned to her natural mother.

REVERSED AND REMANDED.