J-S07003-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: H.P., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.P., MOTHER | : : : : : : : | |
| | : | No. 2091 EDA 2019 |

Appeal from the Order Entered July 15, 2019
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001151-2019

BEFORE:  NICHOLS, J., KING, J., and STRASSBURGER, J.[*]

MEMORANDUM BY NICHOLS, J.:                **FILED APRIL 06, 2020**

S.P. (Mother) appeals the order adjudicating her minor daughter, H.P. (Child), born in June 2019, dependent, committing Child to care of DHS, and placing Child in kinship care.[1]  We affirm.

The trial court set forth the relevant factual and procedural history of this appeal as follows:

> [The Philadelphia Department of Human Services (DHS)] originally became involved with this family in 2013.  DHS has received numerous General Protective Services (GPS) and Child Protective Services (CPS) reports regarding this family and siblings[fn2] between 2013 and 2018 for issues including drug use

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] J.M. did not appeal the adjudication order and has not filed a brief in the instant appeal.  As noted below, J.M. believed he was Child's father but requested a paternity test.  The results of the paternity test were not included in the certified record.  Nevertheless, Appellant and the trial court referred to J.M. as "Father," and we do so as well in this memorandum.

by parents, domestic violence, and failure to provide appropriate medical care. Mother has been transient since May 2017. Mother has a history of mental health [issues] and drug use. Mother's other children have open dependency matters. On June 14, 2019, DHS received a GPS report alleging that Mother gave birth to Child; Mother wanted to avoid contact with DHS as she previously had children involuntarily removed from her care; Mother did not receive prenatal care during the entire pregnancy; Mother resides with Maternal Grandmother; Mother stated that she was prepared to care for Child; and Father is involved.[fn3] This report is valid. Child was subsequently transferred from Delaware County Memorial Hospital to Children's Hospital of Philadelphia [(CHOP)] on July 9, 2019.

> [fn2] Child has multiple older siblings that have been involved with DHS on multiple occasions. Child has two siblings that reside with their respective fathers; two siblings [to whom] Mother's parental rights were involuntarily terminated on November 5, 2018; and three siblings that have open dependency matters and currently reside in foster care. [Father was the biological parent of at least two of the three siblings with open dependency matters. In March 2019, before the hearing in the instant matter, the trial court ordered a suspension of Mother's visits with Child's siblings until Mother provided negative drug screens for sixty days. There was no indication that Mother complied.]

> [fn3] Mother has verbally identified Father. The trial court ordered that Father complete a paternity test as to Child. [The result of the paternity test was not contained in the certified record in this appeal].

On June 17, 2019, DHS visited the home of Maternal Aunt. DHS determined that Maternal Aunt's home was appropriate and DHS completed all necessary background clearances. On July 9, 2019, DHS obtained an Order of Protective Custody (OPC) for Child in order to ensure her safety. Child was subsequently placed with Maternal Aunt, where she currently remains.

A shelter care hearing was held for Child on July 11, 2019. Mother was present for this hearing. The trial court lifted the OPC and ordered the temporary commitment to DHS to stand. The trial

court ordered Mother to attend supervised visits with Child. On July 12, 2019, DHS filed a dependency petition for Child.

On July 15, 2019, an adjudicatory hearing was held for Child. Mother was present for this hearing. The trial court [also heard and] incorporated all relevant testimony regarding Mother's objectives given during Child's siblings' permanency review. After all testimony was given, the trial court found clear and convincing evidence to adjudicate Child dependent. The trial court discharged the temporary commitment to DHS[,] and Child was fully committed to DHS based on a finding of present inability. The trial court ordered Mother to sign releases, engage in parenting specifically for Child's medical needs, and [directed] Mother is not to visit Child in Maternal Aunt's home. The trial court suspended Mother's visitation on the grounds of grave threat until she consistently engages in both mental health and drug and alcohol treatment, as well as provide negative drug screens for 60 days. If Mother complies with the objectives, Mother's visits may be reinstated to monthly line-of-sight and line-of-hearing supervised visits at the agency with 24[-]hour and day-of confirmation . . . .

Trial Ct. Op., 9/25/19, at 1-2 (some formatting altered).

At the conclusion of the July 15, 2019 hearing, the trial court adjudicated Child dependent and entered an order memorializing its findings and conclusions. On July 21, 2019, Mother filed a motion for reconsideration, although the trial court did not rule on the motion.[2]

Mother timely filed a notice of appeal and concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b) on July 23, 2019. The trial court filed a Rule 1925(a) opinion.

Mother raises the following issues on appeal:

---

[2] Because the trial court did not rule on the motion for reconsideration and Mother has proceeded with this appeal, the motion for reconsideration is deemed denied. *See* Pa.R.C.P. 1930.2(b); Pa.R.A.P. 1701(b)(3).

1. Whether the trial court erred as a matter of law or abused its discretion in finding that the Philadelphia Department of Human Services met its burden to prove, by clear and convincing evidence, that [Child] was a dependent child.

2. Whether the trial court erred as a matter of law or abused its discretion in finding that the Philadelphia Department of Human Services met its burden to prove that it was clearly necessary to remove [Child] from her parents' care.

3. Whether the trial court erred as a matter of law in making the pre-placement finding required by 23 Pa.C.S. § 6351(b)(2) of the Pennsylvania Juvenile Act, by determining that the Philadelphia Department of Human Services made reasonable efforts to prevent or eliminate the need for the removal of [Child] from her parents' care.

Mother's Brief at 3 (some formatting altered).

We summarize Mother's first two issues together. First, Mother argues that the court erred in adjudicating Child dependent. Mother's Brief at 11. Mother argues that DHS did not meet the second prong of the dependency test because Father was available to care for Child. *Id.* Mother contends that Father was not contacted prior to DHS obtaining custody of Child, and that, at all times, Father has been ready, willing, and able to care for Child. *Id.* at 11-12.

Second, Mother argues that the court erred in determining that it was clearly necessary for Child to be removed. *Id.* at 14. Mother claims that Child could have been reunified with Father, as there were no issues concerning abuse or neglect by Father. *Id.* at 15. Mother argues that the trial court should have considered allowing Child to remain in Father's care, under the supervision of DHS. *Id.* at 15-16.

- 4 -

Initially, we note that

> [t]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010) (citation omitted). "The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted).

The burden of proof in a dependency proceeding is on the petitioner "to demonstrate by clear and convincing evidence that a child meets that statutory definition of dependency." *In re G.T.*, 845 A.2d 870, 872 (Pa. Super. 2004) (citation omitted). Section 6302 of the Juvenile Act, 42 Pa.C.S. §§ 6301-6375, defines a "dependent child" as a child who:

> (1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk[.]

42 Pa.C.S. § 6302. "The question of whether a child is lacking proper parental care or control so as to be a dependent child encompasses two discrete

questions: whether the child presently is without proper parental care and control, and if so, whether such care and control are immediately available." **G.T.**, 845 A.2d at 872 (citation and quotation marks omitted).

Our Supreme Court has held that "a child, whose non-custodial parent is ready, willing and able to provide adequate care to the child, cannot be found dependent . . . ." **In re M.L.**, 757 A.2d 849, 849 (Pa. 2000). This Court has further noted that

> [w]hen a child is adjudicated dependent, the child's proper placement turns on what is in the child's best interest, not on what the parent wants or which goals the parent has achieved. Moreover, although preserving the unity of the family is a purpose of the [Juvenile] Act, another purpose is to "provide for the care, protection, safety, and wholesome mental and physical development of children coming within the provisions of this chapter." 42 Pa.C.S. § 6301(b)(1.1). Indeed, "[t]he relationship of parent and child is a status and not a property right, and one in which the state has an interest to protect the best interest of the child."

**In re K.C.**, 903 A.2d 12, 14-15 (Pa. Super. 2006) (some citations omitted).

Following an adjudication of dependency, the child may not be removed from the care of a parent absent a showing of clear necessity for removal namely, where the welfare of the child requires it. **See In re A.L.**, 779 A.2d 1172, 1175 (Pa. Super. 2001). When the trial court removes a child from his or her home, our Rules of Juvenile Court Procedure provide that the court must determine whether "the child's placement is the least restrictive placement that meets the needs of the child, supported by reasons why there

are no less restrictive alternatives available[.]" Pa.R.J.C.P. 1242(C)(3)(c); *see also* Pa.R.J.C.P. 1514(A)(2).

In the instant case, the record supports the trial court's conclusion that Child was without proper parental care or control. We note that Mother does not argue that she was available to provide proper care and control for Child. The record shows that Mother has had a long history of contact with DHS, including having seven other children removed from her care. At the time of the hearing, Mother had her parental rights to two children terminated and three other children had open dependency cases, including two children she had with Father.

Moreover, as part of the previous family service plan for Child's two siblings, Mother was to obtain and maintain housing. Although DHS eventually determined that Mother was living with Maternal Grandmother by 2019, the former DHS social worker assigned to Mother's case testified that there was a period of time when Mother would say that she lived with Maternal Grandmother, while Maternal Grandmother would state Mother lived in a shelter. N.T., 7/15/19, at 54.

Similarly, under the previous family service plan, Mother was to address her history of untreated mental health issues, substance abuse issues, and domestic violence concerns. *Id.* at 21-22, 29-30. Mother, however, did not engage in mental health treatment and anger management treatment or enroll in a drug and alcohol program. *Id.* at 25-35. Indeed, based on Mother's ongoing substance abuse issues, the trial court entered an order suspending

- 7 -

her visitation with her two other children until she was able to provide negative drug screens for sixty days. *Id.* at 35-36. A drug screen from July 8, 2019, one week before the adjudicatory hearing in this matter, showed that Mother recently relapsed. *See id.* at 11, 35-36.

As to Child, Mother did not receive prenatal care during her pregnancy with Child, and Child was born prematurely. *Id.* at 95. Child was a medically needy baby as a result of vocal cord paralysis and feeding issues, and spent several weeks in the hospital following her birth. *Id.* at 97-98. Additionally, there was no indication that Mother took part in the medical training at the Children's Hospital of Pennsylvania (CHOP) to learn how to care for Child's daily needs. *Id.* at 97-103. The trial court also expressed concern as to whether Mother could attend to Child's medical needs, noting testimony that during a visit with another child, she attempted to administer asthma medicine when that child was not having an asthma attack. *Id.* at 61. Accordingly, the record established that Mother was not able to provide proper care and control for Child. *See G.T.*, 845 A.2d at 872.

As to Mother's specific contention that Father was available to provide proper care and control for Child, the record shows the following. At the dependency adjudication hearing, Father believed that Child was his, but requested a paternity test. N.T., 7/15/19, at 6. Additionally, Father stipulated to all allegations in the dependency petition. *Id.* at 7-10. Specifically, Father stipulated that

[Father] has a history of drug use and domestic violence with [Mother]. [Father] also has a history of neglecting the medical needs of his children when they were in his care. [Father] has been diagnosed as suffering from personality disorder in 2017 and it was recommended at that time that he attend individual psychotherapy counseling and group therapy.

Dependency Pet., 7/12/19, at 2. DHS introduced into evidence Father's forensic parental capacity evaluation (PCE) and a single-page addendum to the evaluation addressing Father's criminal history.[3] N.T., 7/15/19, at 16-17. DHS recommended that Father (1) engage in drug and alcohol treatment, (2) demonstrate six months of consecutive sobriety, (3) engage in mental health treatment with a provider who can address his mental health needs and domestic violence and work with him on insight, and (4) develop and implement a sustainable financial plan. *Id.* at 41.

At the time of the hearing, there were indications that Father made progress warranting increased visitation and a re-evaluation for reunification with his two other children. *See id.* at 92-94. Father also expressed an interest in caring for Child if he was Child's biological parent. *Id.* at 90. However, there was no evidence that Father had completed all of his goals and could maintain the welfare, safety or health of his children. Given Child's medical needs, including the vocal cord paralysis resulting from her premature birth, there was no indication that Father was capable of exercising proper parental care and control of Child. *Id.* at 94, 97-98. Moreover, as noted by

_____

[3] The PCE, although introduced into evidence, does not appear in the certified record. Counsel for DHS avers that the report found that Father lacked the capacity to provide permanency and safety for his children. Appellee's Brief at 4-5.

the former DHS social worker, it was not yet confirmed that Father was a biological parent of Child. *Id.* at 94.

Based on the foregoing, we conclude that the record belies Mother's arguments. The evidence supported the trial court's findings that Child was dependent, that Father was not a safe or appropriate option for Child's care, and that Child's removal from parents' care was clearly necessary. *See G.T.*, 845 A.2d at 872; *see also In re B.B.*, 745 A.2d 620 (Pa. Super. 1999) (finding that because the absent father was unknown to children, it prevented his designation as a proper parental caregiver to them). Accordingly, Mother's first two appellate issues merit no relief.

In her third issue, Mother argues that the trial court erred in determining that DHS made reasonable efforts to prevent the placement of Child. Mother's Brief at 16. Mother notes that DHS failed to contact Father or evaluate his home prior to obtaining the OPC. *Id.* Mother also states that DHS failed to visit her home or offer her services sufficient to address her intellectual disability in the year prior to the birth of Child. *Id.* Mother relies on *In the Interest of S.A.D.*, 555 A.2d 123 (Pa. Super. 1989), *In the Interest of James Feidler*, 573 A.2d 587 (Pa. Super. 1990), and *In re W.M.*, 41 A.3d 618 (Pa. Super. 2012), to support her position that DHS did not take reasonable efforts to prevent Child's placement. *Id.* at 17-19.

Mother also argues that the trial court erred in failing to make a finding that the lack of preventative services was reasonable under the circumstances. *Id.* at 17. In sum, Mother contends that the trial court erred

by failing to consider the findings of fact required by 42 Pa.C.S. § 6351(b) and

Pa.R.J.C.P. 1514(A)(5).

Section 6351(b) states:

**(b) Required preplacement findings.**—Prior to entering any order of disposition under subsection (a) that would remove a dependent child from his home, the court shall enter findings on the record or in the order of court as follows:

(1) that continuation of the child in his home would be contrary to the welfare, safety or health of the child; and

(2) whether reasonable efforts were made prior to the placement of the child to prevent or eliminate the need for removal of the child from his home, if the child has remained in his home pending such disposition; or

(3) if preventive services were not offered due to the necessity for an emergency placement, whether such lack of services was reasonable under the circumstances; or

(4) if the court has previously determined pursuant to section 6332[4] (relating to informal hearing) that reasonable efforts were not made to prevent the initial removal of the child from

_____

[4] Section 6332 states, in relevant part:

If the child is alleged to be a dependent child, the court or master shall also determine whether reasonable efforts were made to prevent such placement or, in the case of an emergency placement where services were not offered and could not have prevented the necessity of placement, whether this level of effort was reasonable due to the emergency nature of the situation, safety considerations and circumstances of the family.

42 Pa.C.S. § 6332(a).

his home, whether reasonable efforts are under way to make it possible for the child to return home; and

(5) if the child has a sibling who is subject to removal from his home, whether reasonable efforts were made prior to the placement of the child to place the siblings together or whether such joint placement is contrary to the safety or well-being of the child or sibling.

42 Pa.C.S. § 6351(b)(1)-(5).[5]

With regard to reasonable efforts at reunification, this Court has stated:

As the Office of Children and Families in the Courts has observed, neither federal nor Pennsylvania law defines "reasonable efforts." Pennsylvania Court's Office of Child and Families in the Courts, *Pennsylvania Dependency Benchbook*, § 19.9.1, at 19–33 (2014). Notwithstanding the lack of a legal definition, we discern the following from prior cases. Because the focus of the Juvenile Act

_____

[5] Similarly, Pennsylvania Rule of Juvenile Court Procedure 1514(A)(5) states:

**A. Required findings.** Prior to entering a dispositional order removing a child from the home, the court shall state on the record in open court the following specific findings:

\* \* \*

(5) One of the following:

(a) Reasonable efforts were made prior to the placement of the child to prevent or eliminate the need for removal of the child from the home, if the child has remained in the home pending such disposition; or

(b) If preventive services were not offered due to the necessity for emergency placement, whether such lack of services was reasonable under the circumstances; or

(c) If the court previously determined that reasonable efforts were not made to prevent the initial removal of the child from the home, whether reasonable efforts are under way to make it possible for the child to return home.

Pa.R.J.C.P. 1514(A)(5)(a)-(c).

is on the dependent child, as opposed to parents, any services for parents must directly promote the best interests of the child. ***In re J.R.***, [875 A.2d 1111, 1118 (Pa. Super. 2005)]. "By requiring only 'reasonable efforts' to reunify a family, the statute recognizes that there are practical limitations to such efforts." ***Id.*** at 1118, n. 5 (citing 4[2] Pa.C.S. §§ 6351(e) & (f)). "It is not sufficient for the court to find simply that an action will promote family reunification; the court must also determine whether the action constitutes a **reasonable** effort towards reunification." ***Id.*** (emphasis in original). This Court has stressed that the agency is not expected to do the impossible and is not a "guarantor of the success of the efforts to help parents assume their parental duties." ***In re A.L.D.***, 797 A.2d 326, 340 (Pa. Super. 2002) (citing ***In re J.W.***, [578 A.2d 952, 959 (Pa. Super. 1990)]).

***In Interest of C.K.***, 165 A.3d 935, 941-42 (Pa. Super. 2017) (footnotes omitted).

Instantly, DHS obtained an OPC shortly after Child's birth, but before Child was discharged from CHOP. The OPC stated that DHS did not offer preventive service due to the necessity for emergency placement and that the lack of services was reasonable under the circumstances. ***See*** OPC, 7/9/19, at 1. In the subsequent order adjudicating Child dependent and placing Child in kinship care, the trial court noted, in part, that DHS "made [r]easonable [e]fforts to prevent or eliminate the need from removal of [Child] from the home." Order of Adjudication and Disposition, 7/15/19, at 1. Following our review, we conclude that the record supports the trial court's determination.

As noted above, Father and Mother both had a history with DHS before Child's birth involving two of their other children. As to Father, despite his progress with respect to his other two children, there was no indication that Father was an appropriate placement resource for Child. Although Father

believed he was Child's father, he also requested a paternity test. Accordingly, Mother has not established that DHS failed to exercise reasonable efforts when it declined to evaluate Father's home as a placement option.

As to Mother, the record established that DHS referred Mother for services for her intellectual disability, but Mother "was unwilling to go." *See* N.T., 7/15/19, at 34. According to the former DHS social worker, Mother "refused to do the paperwork" with DHS to arrange for an intensive case manager to assist with the Office of Intellectual Disability. *Id.* at 57-58. Mother also failed to address her mental health, substance abuse, or anger management issues with respect to her other children. Notably, Mother concealed from DHS that she was pregnant with Child. *See id.* at 23-24, 39. Based on this record, we discern no merit to Mother's argument that the trial court erred in finding that DHS exercised reasonable efforts to prevent Child's removal from Mother's care.

To the extent Mother relies on *S.A.D.* and *Feidler*, her reliance on those cases is misplaced. In *S.A.D.*, the mother went to the agency for assistance and accomplished some of the goals set by the agency without any assistance. *S.A.D.*, 555 A.2d at 128. While there was no evidence of abuse or neglect, the agency still refused to reunify the mother and the child. *Id.* On appeal, we reversed the trial court's adjudication of dependency, finding that the agency failed to present clear and convincing evidence of dependency and failed to make reasonable efforts to prevent the separation of mother and child. *Id.*

In **Feidler**, this Court concluded that the trial court abused its discretion by finding that the removal of children from the parents' home was necessary because the parents violated the conditions the trial court had previously imposed for keeping their children. **Feidler**, 573 A.2d at 590-91. In addition to finding that the record did not support the trial court's findings that the parents violated the agency's conditions, the **Feidler** Court noted that the "record upon which to justify removal of [the] children from their family home" was "woefully inadequate." **Id.** at 589.

Here, in contrast to **S.A.D.** and **Feidler**, the record contains ample evidence supporting the trial court's determination that there was clear and convincing evidence of neglect supporting the adjudication of dependency.

Similarly, we find Mother's reliance on **W.M.** unpersuasive. **W.M.** considered an agency's responsibilities in the context of a voluntary placement agreement and federal foster care maintenance payment funding. **See W.M.**, 41 A.3d at 627-29. To the extent **W.M.** commented on the reasonableness of the agency's efforts, that discussion was *dicta*. **See id.** at 629 (indicating that this Court refused to consider the agency's claim of reasonable efforts because the issue was not preserved in its Rule 1925(b) statement, and further, noted that the trial court found that the agency's efforts were reasonable).

Lastly, as to Mother's claim that the trial court failed to consider Section 6351(b)(3), the record shows that the OPC contained a finding that that the lack of preventative services was reasonable under the circumstances. **See**

OPC, 7/9/19, at 1. Subsequently, the trial court did not expressly address whether the lack of preventative services was reasonable in its adjudication and disposition order. However, based on our review of the record, we observe that the trial court was aware of the procedural history of the case, including DHS's efforts with respect to Child and Mother's other children, and found that DHS exercised reasonable efforts. Accordingly, under the circumstances of this case, we conclude that Mother's argument that DHS failed to exercise reasonable efforts to prevent placement warrants no relief. *See In re R.J.T.*, 9 A.3d at 1190.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

Date: <u>4/6/2020</u>

- 16 -