97 P.3d 706 (2004)
2004 UT App 255
STATE of Utah, in the interest of A.C., R.C., R.C., J.C., and O.C., persons under eighteen years of age.
J.C., Respondent and Appellant,
v.
State of Utah, Petitioner and Appellee.
No. 20030322-CA.
Court of Appeals of Utah.
July 29, 2004.
*707 John E. Laherty, Lokken & Associates PC, Salt Lake City, for Appellant.
*708 Mark L. Shurtleff, Attorney General, and John M. Peterson, Assistant Attorney General, Salt Lake City, for Appellee.
Martha Pierce and Tracy S. Mills, Salt Lake City, Guardians Ad Litem.
Before Judges BILLINGS, BENCH, and THORNE.

OPINION
THORNE, Judge:
¶ 1 Father appeals the termination of his parental rights, arguing that the evidence was insufficient to support the juvenile court's conclusion that the Division of Child and Family Services (DCFS) made reasonable efforts to reunify him with his minor children.

BACKGROUND
¶ 2 J.C. is the natural father of the minor children A.C., R.C., J.C., R.C., and O.C. (the Children). On May 14, 2001, DCFS contacted the Children's parents after receiving reports of domestic violence, nonsupervision, and neglect. After investigating, a DCFS caseworker informed the parents that they each needed to submit to urine screens, to send the Children to school on a regular basis, and to get the Children necessary medical and dental care.[1] When the parents did not comply with these demands, DCFS removed the Children from the home.
¶ 3 On June 4, 2001, DCFS filed a verified petition in juvenile court alleging that the Children were neglected and abused, as those terms are defined in the Utah Code. After review, the juvenile court ordered DCFS to "provide appropriate services as soon as possible in an effort to reunify the family." On July 12, 2001, Father admitted to the allegations in the Amended Verified Petition and the juvenile court found that the Children were neglected and removed the Children from the parents' custody. The court then stayed the order "on a day to day basis contingent on the parents['] compliance with the service plan."
¶ 4 The court returned the Children to the home in July 2001 and ordered the parents to "submit to random urine screens," "maintain their housing, [obtain] stable employment for the father, cooperate with the caseworker[,] and attend all court hearings in juvenile and criminal court." The parents were also ordered to apply for health insurance, to "meet the medical needs of their children," and to ensure that the Children "attend[ed] school every day unless medically excused."
¶ 5 In October 2001, the court concluded that the parents had not successfully complied with the treatment plan because, among other things, Father had not submitted to the random drug tests. DCFS removed the Children from the home and placed them in foster care. On November 15, 2001, the court ordered both parents to participate in the Dependency Drug Court Program provided by the Third District Juvenile Court. This order was renewed on November 30th and December 5th. On December 17, 2001, after failing to appear in court, and failing to acknowledge his drug problem, Father was discharged from the drug court program.[2]
¶ 6 On October 15, 2002, DCFS filed a petition to terminate the parents' parental rights. In the petition, DCFS alleged that it had "initiated four service plans to the parents with the goal of having their children returned to their custody." DCFS further alleged that Father had "not maintained suitable housing," that he failed to acknowledge the occurrence of domestic violence between he and his wife, that he had not completed a substance abuse program, and that he was unable to financially support the Children.[3]
*709 ¶ 7 After a two-day trial, the juvenile court found that (1) the Children had been neglected; (2) Father was an unfit parent; (3) the Children had been in out-of-home placement and "there is a substantial likelihood that [Father] is not... capable of exercising proper and effective parental care"; (4) Father had failed to "make a parental adjustment"; and (5) Father had only made "token efforts to ... avoid being an unfit parent." The juvenile court also found that:
The Division of Child and Family Services has provided reasonable and adequate services for [Father] ... during the course of there [sic] involvement with the family. Their services include but are not limited to the following:
(a) Family preservation services in the home;
(b) The State arranged for and paid for substance abuse evaluations for both parents;
(c) Both parents were given the opportunity to participate in the dependency Drug Court;
(d) The State arranged for family therapy for both parents at Odyssey House and for [Mother] with a private therapist;
(e) The State arranged for and facilitated visitation for the parents and children;
(f) The State attempted to assist [Father] with obtaining housing;
(g) The State made referrals for domestic violence, anger management and drug treatment for [Father];
....
(j) The State has provided extensive counseling for all five children.
Relying upon Utah Code Annotated section 78-3a-407(4) (1996),[4] the court terminated Father's parental rights, finding that DCFS
has made diligent efforts to provide appropriate services to [parents] and they have substantially neglected, willfully refused, or [have] been unable or unwilling to remedy the circumstances that caused the children to be in an out-of-home placement, and there is a substantial likelihood that [parents] will not be capable of exercising proper and effective parental care in the near future, thereby, justifying a termination of their parental rights.
Father appeals.

ANALYSIS
¶ 8 As a threshold matter, the State argues that Father failed to preserve his appellate claim relating to the adequacy and reasonableness of DCFS's reunification services. See, e.g., State v. Richins, 2004 UT App 36, ¶ 8, 86 P.3d 759 ("As a general rule, appellate courts will not consider an issue, including a constitutional argument, raised for the first time on appeal unless the trial court committed plain error or the case involves exceptional circumstances." (quotations and citation omitted)). We disagree. Throughout trial Father questioned witnesses regarding the type of services DCFS offered and provided. Father also stated, in his closing argument, that
[t]he services that DCFS required [Father] to do were unreasonable within the time period. They were unreasonable within his financial status and unreasonable in expecting him to seek out the services without the help of a specific case worker.
We conclude that Father sufficiently preserved his argument. See In re C.C., 2002 UT App 149, ¶ 5, 48 P.3d 244.
¶ 9 Father argues that the juvenile court's determination that DCFS made "reasonable efforts" to reunify him with the Children is not supported. Utah Code Annotated section 78-3a-407(3)(a) (2002) provides that "[i]n any case in which the court has directed the division to provide reunification services to a parent, the court must find that the division made reasonable efforts to provide those services before the court may terminate the parent's rights" pursuant to Utah Code Annotated sections 78-3a-407 (1)(b), (1)(c), (1)(d), (1)(e), (1)(f), or (1)(h). In *710 In re M.C., 2003 UT App 429, 82 P.3d 1159, we reviewed a trial court's finding that DCFS had made reasonable reunification efforts. There, we concluded that the issue involved "application of statutory law to the facts and ... present[ed a] mixed question of fact and law." Id. at ¶ 16 (citations, quotations, and alterations omitted). Accordingly, we "review[ed] the juvenile court's factual findings for clear error and its conclusions of law for correctness, affording the court some discretion in applying the law to the facts." Id. (citations and quotations omitted).[5]
¶ 10 In M.C., however, we did not fully explore the amount of discretion granted to the trial court's application of the law to the facts. See id. at ¶ 16. Before we reach the merits of Father's appeal, we first address this question. In State v. Pena, 869 P.2d 932 (Utah 1994), the Utah Supreme Court recognized that appeals of "the application of law to fact," id. at 936, necessarily require a determination of "when the articulated legal rule to be applied to a set of facts ... embodies a de facto grant of discretion." Id. at 937. Consequently, the court provided the following as guidance for determining when such a grant of discretion exists:
[R]easons ... useful in discerning when some degree of discretion ought to be left to a trial court [are]: (i) when the facts to which the legal rule is to be applied are so complex and varying that no rule adequately addressing the relevance of all these facts can be spelled out; (ii) when the situation to which the legal principle is to be applied is sufficiently new to the courts that appellate judges are unable to anticipate and articulate definitively what factors should be outcome determinative; and (iii) when the trial judge has observed "facts," such as a witness's appearance and demeanor, relevant to the application of the law that cannot be adequately reflected in the record available to appellate courts.
Id., at 938-39 (citation omitted).
¶ 11 The factual situations that give rise to the termination of parental rights vary greatly; thus, the number, quality, and array of services that should be provided for reunification also vary greatly. In fact, Utah Code Annotated section 62A-4a-202(4)(c) (Supp.2003) explicitly provides that DCFS "shall allow family preservation caseworkers to be creative and flexible in responding to the needs of each individual family," (emphasis added), thereby acknowledging that DCFS must treat each family according to their needs. Consequently, termination cases present situations where "the facts to which the legal rule is to be applied are so complex and varying that no rule adequately addressing the relevance of all these facts can be spelled out." Pena, 869 P.2d at 939 (emphasis added).
¶ 12 Additionally, the trial court is in the best position to evaluate the credibility and competence of those who testify regarding the services that were provided, the parent's level of participation in such services, whether the services were properly tailored to remedy the specific problems that led to removal of the child, and whether the parent successfully accessed and then utilized such services to remedy the problem necessitating the removal. Consequently, determining whether or not DCFS has provided "reasonable services" to parents requires trial judges to observe "`facts [ ]' ... relevant to the application of the law that cannot be adequately reflected in the record available to appellate courts." Id. at 939 (citation omitted); see also In re G.B., 2002 UT App 270, ¶ 9, 53 P.3d 963 (noting that we defer to the juvenile court on matters of credibility). Accordingly, we conclude that the trial court has broad discretion in determining whether DCFS had made reasonable efforts at reunification.[6]
*711 ¶ 13 Utah Code Section 78-3a-407(3)(a) requires the court to find that DCFS "made reasonable efforts to provide [court ordered reunification services] before the court may terminate the parent's rights." As the Utah statutes do not define the phrase "reasonable efforts," nor has the phrase been defined by Utah jurisprudence, interpretation of this phrase is a question of first impression.[7]

*712 When faced with a question of statutory construction, and in attempting to determine legislative intent, this court first looks to the plain language of the statute. In construing a statute, we assume that "each term in the statute was used advisedly; thus the statutory words are read literally, unless such a reading is unreasonably confused or inoperable." "Only if we find some ambiguity [in the statute's plain language] need we look further," and only then "need we seek guidance from the legislative history and relevant policy considerations."
In re Estate of Flake, 2003 UT 17, ¶ 25, 71 P.3d 589 (citations omitted). We conclude that the phrase "reasonable efforts," although undefined in section 78-3a-407, is not ambiguous, for the legislative meaning can be gleaned from the definition of the individual words comprising the phrase. See generally State v. Redd, 1999 UT 108, ¶ 11, 992 P.2d 986 (Utah 1999) ("[T]his court has a long history of relying on dictionary definitions to determine plain meaning.").
¶ 14 Reasonable is commonly defined to mean "not extreme or excessive" or "fair." Merriam-Webster's Collegiate Dictionary 974 (10th ed.1999). "Effort" is commonly defined to mean "conscious exertion of power: hard work" or as a "serious attempt." Id. at 368. Thus, DCFS would comply with its statutory obligation to make reasonable efforts toward reunification if it makes a fair and serious attempt to reunify a parent with a child prior to seeking to terminate parental rights. See also In re Eden F., 48 Conn.App. 290, 710 A.2d 771, 782-83 (1998) (noting that "the word [']reasonable['] is the linchpin on which the department's efforts in a particular set of circumstances are to be adjudged" and that "reasonableness is an objective standard and whether reasonable efforts have been proven depends on the careful consideration of the circumstances of each individual case" (citation omitted)), rev'd on other grounds, 250 Conn. 674, 741 A.2d 873 (1999); accord In re J.D., 2001 WL 1042577, at *7-8, 2001 Conn. Super LEXIS 2358, at *21-22 (Conn.Super.Ct. Aug. 8, 2001).
¶ 15 In this case, Father was directed by the court to (1) participate in a drug rehabilitation program, (2) participate in anger management and domestic violence counseling, and (3) obtain housing. After hearing the evidence, the juvenile court concluded that DCFS made reasonable efforts to reunify Father with his Children by providing him with drug rehabilitation treatment, counseling, and assistance in obtaining housing. As *713 this determination results from the application of the facts to the law, we grant the juvenile court broad discretion. See State v. Pena, 869 P.2d 932, 938-39 (Utah 1994).
¶ 16 Father argues that DCFS did not offer him the proper level of assistance in regard to drug rehabilitation. Although DCFS does not normally provide such direct services, the court attempted to enroll Father in drug court. Father was informed of the value of participating in the drug court program and that as a drug court participant he would not be relegated to a waiting list for drug treatment. In essence, Father was informed that drug court would provide him the opportunity for immediate access to a free and comprehensive drug rehabilitation program. However, because he subsequently refused to admit to his drug problem, Father was determined to be an inappropriate candidate for drug court. Consequently, DCFS referred Father to a drug rehabilitation program at Cornerstone, the only program Father could afford in the absence of drug court. However, Father failed to complete Cornerstone's drug rehabilitation program, and his urinalysis tests consistently showed the presence of illegal drugs. Under these circumstances, we agree with the trial court's conclusion that DCFS made reasonable efforts; i.e., a fair and serious attempt to provide Father with drug rehabilitation. See In re M.M., 562 So.2d 524, 525 (Ala.Civ.App.1990) (finding that reasonable efforts had been proven when state required parent to provide six urine tests, but mother only provided two urine tests).
¶ 17 Next, Father argues that DCFS did not provide him with the proper level of assistance in regards to his domestic violence and anger management classes. Father complains that he did not realize for several months that it was his responsibility to follow through with court-ordered counseling, and that only later, after contacting DCFS, was he told to attend classes at Cornerstone. Father's argument is unavailing. DCFS referred Father to acceptable programs regarding domestic violence and anger management, and although Father eventually completed anger management treatment, he did not complete the required domestic violence program. Instead, although he started the domestic violence treatment program offered through Cornerstone, the program determined that he had dropped out after he consistently failed to attend the required treatment classes. It was ultimately Father's responsibility to ensure that he completed the treatment plan, and he failed to do so. See Utah Code Ann. § 78-3a-407(1)(d) (2002) (stating that parental rights are terminable if the court finds, among other things, that the parent "has been unable or unwilling to remedy the circumstances that cause the child to be in an out-of-home placement," and that it is unlikely that the parent will remedy the circumstances "in the near future"). We agree with the trial court's conclusion that, under these circumstances, DCFS made reasonable efforts to provide Father with counseling. See In re G.C., No. 2-290, 2002 WL 535453, at *2, 2001 Iowa App. LEXIS 588, at *4 (Iowa Ct.App. Apr. 10, 2002) (concluding that "[t]he State ha[s] the obligation to make reasonable efforts, but it is the parent's responsibility to demand services if they are not offered prior to the termination hearing"); In re M.L., No. 3-660, 2003 WL 22092507, at *1, 2003 Iowa App. LEXIS 754, at *5 (Iowa Ct.App. Sept. 10, 2003) (concluding that when the department afforded the parent "twice-weekly supervised visits as well as weekend phone calls" that reasonable efforts had been made). Father was provided with a fair and serious means of remedying one of the problems that led to the removal of the Children. Father chose not to avail himself of the proffered opportunity.
¶ 18 Father finally argues that DCFS did not provide him with the necessary assistance to obtain suitable housing because DCFS lost paperwork that he submitted. Although we sympathize with Father's frustration with DCFS and the clerical errors that occurred in this case, DCFS's failure to keep track of his application was not the sole cause of Father's inability to receive housing assistance. Rather, the record makes clear that to obtain the benefit, Father was required to maintain a job and regularly provide DCFS with proof of employment in the form of check stubs. He did *714 neither. Because Father failed to maintain any employment during this period, DCFS's failure to track his housing application had little practical effect. While DCFS should properly maintain and process its records, we cannot say, as a matter of law, that its failing to do so in this case constitutes a lack of reasonable reunification efforts.
¶ 19 Under these circumstances, we defer to the juvenile court's conclusion that DCFS made reasonable efforts to help Father obtain housing. See In re Charles A., 55 Conn.App. 293, 738 A.2d 222, 223-24 (1999) (noting that an error in failing to recognizing mother as a victim did not make the state's reunification efforts unreasonable); In re Daniel M., 2002 WL 31174257, at *7 n. 26, 2002 Conn.Super. LEXIS 2855, at *27 n. 26 (Conn.Super.Ct. Aug. 27, 2002) ("Only `reasonable' efforts are required for reunification because `it is axiomatic that the law does not require a useless and futile act.' "(citation omitted)); In re D.T., 697 S.2d 665, 672 (App.La.1997) (noting that "the State is required to make `every reasonable effort' at reunification, not to pursue every possible avenue of reunification regardless of the likelihood of success").

CONCLUSION
¶ 20 The juvenile court has been granted broad discretion in determining whether or not DCFS made "reasonable efforts" to reunify a child with its parents. Accordingly, we defer to the court's determination, and absent a demonstration that the determination was clearly in error, we will not disturb the determination. Based on this standard, we conclude that the juvenile court acted within its discretion when it found that DCFS had made reasonable efforts to reunify Father with the Children prior to terminating his parental rights.
¶ 21 WE CONCUR: JUDITH M. BILLINGS, Presiding Judge and RUSSELL W. BENCH, Associate Presiding Judge.
NOTES
[1] This appeal relates only to the termination of Father's parental rights. We cite facts relating to the Children's mother only as needed for completeness.
[2] At the termination trial, Father admitted that he had been using marijuana regularly for over twenty years.
[3] On October 28, 2002, the court conducted a hearing. At this hearing, the Assistant Attorney General proffered the testimony of Michelle Moyes, a DCFS employee. A copy of this proffered evidence was not included in the appellate record. In its written order following the hearing, the court found "that the Division of Child and Family Services has offered reasonable services [to] parents in an effort to reunify them with their children."
[4] The Legislature has since renumbered this statute, and the section relied upon by the trial court is found at Utah Code section 78-3a-407(1)(d) (2002).
[5] We have rephrased the issue on appeal to comport with the proper standard of review. In his brief, Father argued that the finding that DCFS made reasonable reunification efforts "was not supported by sufficient evidence." Father's approach treated the trial court's determination as one of fact. As discussed in the body of the opinion, the question of whether reasonable reunification efforts were made is a mixed question of law and fact. See In re M.C., 2003 UT App 429, ¶ 16, 82 P.3d 1159.
[6] Our decision to grant broad discretion to the trial court in this instance does not foreclose the development of more definite rules regarding what constitutes "reasonable efforts." As the Utah Supreme Court stated in State v. Pena, 869 P.2d 932 (Utah 1994),

We are not precluding this court ... from effectively fencing off parts of the discretionary pasture from trial judges once the reviewing courts have enough experience with certain recurring fact patterns that the legal effect of those patterns can be settled with comfort. However, except in those situations in which appellate courts feel comfortable in developing the law in such a manner, trial courts should be permitted some rein to grapple with the multitude of fact patterns that may constitute [reasonable reunification efforts.]
Id. at 940 (Utah 1994). This discretion is not, however, unfettered, and the trial courts must make sufficiently detailed findings as necessary to facilitate appellate review.
For completeness, we also note that not all courts tasked with reviewing the issue of whether reasonable reunification efforts have been provided review the issue as a mixed question of law and fact. Many jurisdictions review the determination as a pure factual finding.
In In re Tabitha T., 51 Conn.App. 595, 722 A.2d 1232 (1998), the Connecticut Court of Appeals reviewed the state's claim that it had made reasonable reunification efforts for clear and convincing evidence and concluded that "this issue should not be disturbed on appeal unless, in light of the evidence in the entire record, it is clearly erroneous." Id. at 1236. In In re M.M., 562 So.2d 524 (Ala.Civ.App.1990), the Alabama Court of Civil Appeals reviewed the termination of a mother's parental rights, see id. at 525, and applied an "ore tenus standard of review." Id."Under the `ore tenus rule,' reviewing courts must affirm the trial court unless its findings are plainly and palpably erroneous." Black's Law Dictionary 1099 (6th ed.1990) (citation omitted); see also T.H. v. Department of Human Res., 740 So.2d 1089, 1091 (Ala.Civ.App.1998) (finding a lack of clear and convincing evidence in support of the trial court's decision to terminate parental rights); In re J.S.S., No. C2-96-547, 1996 WL 557361, at *3, 1996 Minn.App. LEXIS 1152, at *8 (Minn.Ct.App. Oct.1, 1996) (finding that "the record contains sufficient evidence to support the trial court's findings that the agency made reasonable efforts to reunify the family").
However, Utah is not alone in its decision to treat this issue as a mixed question of law and fact. In In re Helms, 127 N.C.App. 505, 491 S.E.2d 672, 675 (1997), a mother appealed an order adjudicating her daughter a neglected child and granting continued custody to the department of social services. See id. The North Carolina Court of Appeals noted that any order "authorizing DSS's continued custody of a neglected juvenile `shall include findings as to whether reasonable efforts have been made to prevent or eliminate the need for placement of the juvenile in custody.'" Id. at 676 (citation omitted). The trial court found that the department of social services had made reasonable efforts. See id. at 675. On appeal, the appellate court considered whether the trial court's finding that reasonable efforts at reunification had been made constituted a legal or factual question. The court reasoned that, "as a general rule, ... any determination requiring the exercise of judgment, or the application of legal principles, is more properly classified as a conclusion of law." Id. at 675 (citations omitted). But, it then concluded that "[a]ny determination reached through `logical reasoning from the evidentiary facts' is more properly classified as a finding of fact." Id. (citation omitted). Based upon these principles, the court concluded that "[t]he reasonable efforts ... determination[ ] [is a] conclusion[] of law because [it] require[s] the exercise of judgment." Id. at 676. Still, because the legislature had not defined the term "reasonable efforts," the court concluded that "the district courts are given great discretion in determining what efforts are reasonable in each case and whether those efforts have been made by DSS." Id. at 677; see also In re Charles A., 55 Conn.App. 293, 738 A.2d 222, 223 (1999) (noting that "`[o]n appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported'" (citation omitted)).
[7] Although not essential to our decision, the origins of the "reasonable efforts" requirement are instructive. In 1980, the United States Congress passed the Adoption Assistance and Child Welfare Act of 1980 (the Act), which is codified throughout the Social Security Act, including Title IV-E, 42 U.S.C. §§ 670-679b, and Title XIX, 42 U.S.C. §§ 1396-1396v. "Under this Act[,] the state is entitled to matching funds when it complies with federal requirements to make reasonable efforts to maintain the family unit when it temporarily or permanently removes the child from the home." In re S.A.D., 382 Pa.Super. 166, 555 A.2d 123, 124 (1989); see also Suter v. Artist M., 503 U.S. 347, 350-51, 112 S.Ct. 1360, 1363, 118 L.Ed.2d 1 (1992). "The purpose of the reasonable efforts requirement was to insure that, prior to the expenditure of federal dollars for foster care, reasonable efforts will be made to prevent the need to place the child in foster care" and to attempt to reunite the family with the child after a child is removed from the home. S.A.D., 555 A.2d at 127.

In 1997, Congress passed the Adoption and Safe Families Act of 1997, PL 105-89, Nov. 19, 1997, 111 Stat. 2115 (ASFA). ASFA retained many aspects of the Act, but also represented a shift from an emphasis on protracted reunification efforts to an emphasis on safety combined with permanency at the earliest possible time. See id. § 101(a). ASFA attempted to limit the time a child would remain in foster care and eliminated the need for reunification efforts in certain aggravated situations, such as when the parent has sexually abused the child or committed murder. See id.
Utah has adopted programs with goals similar to those expressed in the Act and ASFA. See Utah Code Ann. §§ 62A-4a-901 to -907 (Supp.2003) (addressing "adoption assistance"); Utah Code Ann. § 62A-4a-201 (2000) (noting that state should intervene in family matters only under limited circumstances); Utah Code Ann. § 62A-4A-203(4) (2000) (noting that in circumstances of serious physical abuse or neglect, the court need not provide reunification services).
"The reasonable efforts requirement of the [Act and ASFA] is twofold." S.A.D., 555 A.2d at 127. A state seeking these federal funds must include in their "state plan a commitment that reasonable efforts will be made to prevent unnecessary placement of children in foster homes, and to return foster children to their homes." Id. (relying upon 42 U.S.C. § 671(a)(15) (1986)). Second, the Act and ASFA require that "[t]he removal of the child from the home [must be] the result of a judicial determination to the effect that ... reasonable efforts [toward reunification] have been made." Id. (relying upon 42 U.S.C. § 672 (1986)). "A judicial determination of those efforts serves to closely examine, in the case of each individual child, whether reasonable efforts were made to keep the family intact." Id. These federal laws comport with Utah's existing policy that family preservation is important and that only in circumstances of abuse or neglect should the state intervene in the parent/child relationship. See Utah Code Ann. § 62A-4a-201. Like the federal statutes on which they were based, Utah did not define "reasonable efforts." However, section 62A-4a-203(2) provides:
In determining the reasonableness of efforts needed to maintain a child in his home or to return a child to his home, in accordance with Subsection (1)(a) or (c), the child's health, safety, and welfare shall be the paramount concern. Additionally, the division shall consider whether those services would be effective within a six-month period, and whether they would be likely to prevent reabuse or continued neglect of the child.
Utah Code Ann. § 62A-4a-203(2).