2015 UT App 44

# THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF A.P., K.P., AND T.P., PERSONS
UNDER EIGHTEEN YEARS OF AGE.

R.P. AND J.P.,
Appellants,
*v.*
STATE OF UTAH,
Appellee.

Per Curiam Decision
No. 20140951-CA
Filed February 26, 2015

Eighth District Juvenile Court, Duchesne Department
The Honorable Ryan B. Evershed
Nos. 1017425, 1092487, and 1092725

Christopher M. Ault and Zachary W. Powell,
Attorneys for Appellants

Sean D. Reyes and John M. Peterson, Attorneys
for Appellee

Dixie A. Jackson, Guardian ad Litem

Before JUDGES STEPHEN L. ROTH, MICHELE M. CHRISTIANSEN,
and KATE A. TOOMEY.

PER CURIAM:

¶1      R.P. and J.P. (Grandparents) appeal from the juvenile court's
October 28, 2014 order terminating reunification services to
Grandparents, denying a motion to set aside D.P.'s (Mother)
voluntary relinquishment of parental rights, and denying

Grandparents' motion to set aside a stipulation among the parties and set the matter for trial.

¶2      On January 23, 2013, Grandparents, Mother, and the Department of Child and Family Services (DCFS) entered into an agreement in which Mother agreed to voluntarily relinquish her parental rights to her children, and DCFS agreed to offer reunification services to Grandparents who had been the children's primary caregivers. Grandparents argue that the juvenile court erred in determining that DCFS provided Grandparents with reasonable services per the terms of that agreement.

¶3      The juvenile court "has broad discretion in determining whether DCFS has made reasonable efforts at reunification." *In re A.C.*, 2004 UT App 255, ¶ 12, 97 P.3d 706. The reason behind this discretion is that "[t]he factual situations that give rise to the termination of parental rights vary greatly; thus, the number, quality, and array of services that should be provided for reunification also vary greatly." *Id.* ¶ 11.

> Additionally, the trial court is in the best position to evaluate the credibility and competence of those who testify regarding the services that were provided, the parent's level of participation in such services, whether the services were properly tailored to remedy the specific problems that led to removal of the child, and whether the parent successfully accessed and then utilized such services to remedy the problem necessitating the removal. Consequently, determining whether or not DCFS has provided "reasonable services" to parents requires trial judges to observe "'facts [ ]' . . . relevant to the application of the law that cannot be adequately reflected in the record available to appellate courts."

*Id.* ¶ 12 (citations omitted).

¶4      DCFS agreed to provide services to Grandparents pursuant to an agreement between the parties, despite the fact that both DCFS and the juvenile court had concerns about the arrangement due to Grandparents' extensive history with DCFS. The juvenile court agreed the services would be provided because Grandparents had essentially acted as the children's parents and the children were bonded to them. However, because of the juvenile court's concerns, the juvenile court was unwilling to grant Grandparents much leeway to depart from the requirements of the reunification plan.

¶5      The initial plan required Grandparents to obtain parental fitness evaluations, visit regularly with the children, attend family team meetings, cooperate with background checks, clean their property, and not allow contact between Mother and the children. Grandparents complied with most of these requirements. However, the lynchpin of the plan was the parental fitness evaluation because the results of that evaluation would allow DCFS and the court to better tailor services to meet the needs of Grandparents and the children. This was important due to Grandparents' previous history with DCFS and the juvenile court's concerns about their ability to parent. The juvenile court determined that Grandparents failed to adequately cooperate in obtaining a valid parental fitness evaluation and, in so doing, failed to cooperate with the most important aspect of the service plan.

¶6      Grandparents were told that they needed to provide open and honest responses to the evaluation in order to obtain the most helpful result. The evaluator determined that Grandparents failed to do this. Specifically, the evaluator found that Grandparents, especially Grandmother, "engaged in a response style of denial and minimalization," and that their response style was one of "self-protection and impression management." Because of this, the evaluator was unable to "give any helpful recommendations regarding improvement of parenting ability." Grandmother's responses particularly concerned the evaluator. Specifically, the evaluator believed that Grandmother's efforts to minimize and

disregard any mistakes she had made and might make in the future were "probably rather chronic and enduring in varied aspects of her life." As a result, Grandmother "will probably not see the need to change anything in her life as she feels that things are without problem and change is not needed." Based on the evaluator's report the juvenile court determined that Grandparents were either deceptive or lacked any insight into their own potential issues.

¶7     As a result of these issues with the parental fitness evaluation, the juvenile court concluded that it was impossible to craft the remaining aspects of the reunification plan needed to ensure the safety and well-being of the children. Further, the background check of Grandmother revealed that she had failed to disclose to either DCFS or the court that she was on federal probation. She also could not pass a DCFS database check for relative placement or adoption of the children due to her history of abuse and neglect. Given the totality of the circumstances, the juvenile court concluded that DCFS had provided reasonable services to Grandparents, but Grandparents were unwilling or unable to meet the goals of the reunification plan. A foundation for this decision is supported by the record. *See In re B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435 ("When a foundation for the court's decision exists in the evidence, an appellate court may not engage in a reweighing of the evidence."). We cannot say that the juvenile court abused its considerable discretion in so concluding. The juvenile court was in the best position to evaluate the credibility of witnesses, the needs of the children and Grandparents, Grandparents' participation in the services, and most importantly Grandparents' ability to successfully access and utilize the services offered, i.e., their ability or willingness to solve the problems that led to their extensive history with DCFS and the juvenile court.

¶8     Accordingly, because the juvenile court did not abuse its discretion in concluding that DCFS provided Grandparents with reasonable services, we affirm the judgment of the juvenile court.

———————