2017 UT App 113

## THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF J.S.,
A PERSON UNDER EIGHTEEN YEARS OF AGE.

J.S.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Per Curiam Opinion
No. 20170365-CA
Filed July 13, 2017

Seventh District Juvenile Court, Price Department
The Honorable Craig M. Bunnell
No. 1117628

Travis H. Blackburn, Attorney for Appellant

Sean D. Reyes, Carol L.C. Verdoia, and John M.
Peterson, Attorneys for Appellee

Martha Pierce, Guardian ad Litem

Before JUDGES GREGORY K. ORME, J. FREDERIC VOROS JR., and
DAVID N. MORTENSEN.

PER CURIAM:

¶1     J.S. (Father) appeals the termination of his parental rights
to his child. We affirm.

¶2     "Whether a parent's rights should be terminated presents
a mixed question of law and fact." *In re B.R.*, 2007 UT 82, ¶ 12,
171 P.3d 435. "Because of the factually intense nature of such an
inquiry, the juvenile court's decision should be afforded a high
degree of deference." *Id.* "Thus, in order to overturn the juvenile
court's decision '[t]he result must be against the clear weight of

the evidence or leave the appellate court with a firm and definite conviction that a mistake has been made.'" *Id.* (alteration in original) (quoting *In re Z.D.*, 2006 UT 54, ¶¶ 33, 40, 147 P.3d 401). Further, "[w]hen a foundation for the court's decision exists in the evidence, an appellate court may not engage in a reweighing of the evidence." *Id.*

¶3 Father raises a single issue on appeal. He claims that the juvenile court erred by "ending reunification with [Father] after [ten] weeks and by not making reasonable efforts to provide services to" Father. In support of his claim, Father argues that he had difficulty drug testing and attending required counseling due to his employment. He also argues that it was not in the child's best interest "to prematurely terminate his reunification services" and that the Division of Child and Family Services (DCFS) "should have made additional efforts to facilitate his drug testing and counseling requirements." Father contends that DCFS did not make reasonable efforts to provide services to him and that DCFS should have offered him alternatives that would have allowed him to "continue to keep working full time at his job and complete the child and family plan at the same time."

¶4 "Utah law requires a court to make two distinct findings before terminating a parent-child relationship." *In re R.A.J.*, 1999 UT App 329, ¶ 7, 991 P.2d 1118. "First, the court must find that the parent is below some minimum threshold of fitness, such as finding that a parent is unfit or incompetent based on any of the grounds for termination" in Utah Code section 78A-6-507. *Id.* (citation and internal quotations marks omitted). "Second, the court must find that the best interests and welfare of the child are served by terminating . . . parental rights." *Id.* Under section 78A-6-507, the finding of a single ground will support termination of parental rights. *See* Utah Code Ann. § 78A-6-507(1) (LexisNexis 2012). Father does not challenge any ground for termination found by the juvenile court. Instead, he characterizes his claim on appeal as a challenge to the best interest determination. The following facts are relevant to the issue on appeal.

¶5     DCFS first became involved with the child and his parents in February 2015 as a result of concerns with domestic violence and drug use by both parents. DCFS offered the parents voluntary services in March 2015, including drug testing, mental health and substance abuse assessments, and treatment for both parents. The child came into DCFS custody on July 8, 2015, as a result of both parents' failure to respond to voluntary services and treatment and their ongoing drug use. On August 13, 2015, the juvenile court entered its "stipulated findings of fact, conclusions of law, and adjudication/disposition order," which established jurisdiction over the child as abused and neglected by the parents. The juvenile court set a primary goal of reunification with the parents and incorporated the Child and Family Plan as a court order.

¶6     In July 2015, Father completed a substance abuse and mental health assessment. In August 2015, Father completed a Parental Fitness Evaluation. That evaluation did not recommend that reunification be pursued with Father because he was not ready to pursue reunification based on his attitudes toward DCFS and his attitude and perspective with respect to drug use. Father was "unapologetic for his behaviors and continued to claim he had done virtually nothing wrong." The evaluation stated that in order for reunification to be recommended, Father would have to remain clean for at least three months and significantly change his attitude and perspective with respect to using drugs. However, in the event that reunification with Father was pursued, the evaluation also recommended the services that would be necessary. The Child and Family Plan included reunification services for Father.

¶7     In August 2015, DCFS filed an order to show cause based on Father's failure to comply with his mandated services. Father admitted the allegations of the order to show cause. On September 2, 2015, the juvenile court found Father to be in contempt of its order and sentenced Father to thirty days in jail with twenty-eight days suspended contingent on future compliance with the court's order. At an October 7, 2015 review

hearing, the juvenile court found that Father had five positive drug tests in September 2015. Father disputed the results and requested an evidentiary hearing. Father had not consistently attended treatment, and he told the court he attended only when he was not working. The juvenile court requested DCFS to file a new order to show cause to address Father's continued noncompliance with the Child and Family Plan and set an evidentiary permanency hearing regarding Father only.

¶8      Father was present and represented by counsel at the November 18, 2015 evidentiary permanency hearing. Father had submitted ten negative drug tests to DCFS in October 2015. He submitted eight drug tests in November 2015 prior to the hearing, all but one of which was negative. However, he tested positive for methamphetamine and THC on November 16, 2015. Father also had not been attending therapy as required. His therapist testified that Father was attending roughly half of the recommended group treatment and had made little progress on his issues. At the hearing, Father stipulated to the termination of reunification services for him. As a result, DCFS requested dismissal of the pending order to show cause. The juvenile court entered a permanency order as to Father, finding that he had not substantially complied with his reunification service requirements or met the goals of the Child and Family Plan, that the child could not be safely returned to Father, and that it would be detrimental to the child to do so. After termination of Father's reunification services, the child's permanency goal was changed to reunification with Mother. Father continued to have supervised visits with the child.

¶9      At the termination trial, Father testified that he believed he needed more treatment than he received and that he asked for inpatient drug rehabilitation and was denied. Father testified that, after he served two days in jail in September 2015, he was pressured to give up his desired goal of reunification with his child. Two months later, in November 2015, he decided to stop working on reunification services because he was "struggling at work and everything." He testified that he was unable to get

time off work to do his classes, therapy, and drug testing. He wanted to continue to get treatment. He did not get treatment earlier in the case because he needed to keep his job. He testified that he never received any accommodation that would have allowed him to go to treatment after hours. Father testified that he felt his drug problem needed to be addressed in a residential drug treatment program. When he was recommended for an outpatient treatment and testing program, he failed to complete that program and chose to quit working on services, asserting that it was too difficult for him to work and do his testing and treatment.

¶10    The juvenile court found that Father had not engaged in any recommended treatment since reunification services were terminated in November 2015. The juvenile court addressed Father's arguments in the following findings:

> It was up to [Father] to work out his employment issues, as it was most important that he engage in treatment and testing. He chose to prioritize his job over addressing his substance abuse and mental health issues. He could offer no proof that he made any reasonable or real effort to work out any claimed conflict between his job and his treatment requirements. He never addressed the issue with the Court and instead just decided to stop the reunification process. [Father] continues to blame others, particularly [DCFS] and the judicial system, for his problems and takes no personal responsibility for his actions or behaviors. He asserted that he wasn't given a fair chance to engage in services to try and remedy the issues which led to the child's removal from [his] care, despite having over two years to do so. He was provided with at least four months of voluntary services before the child was placed into [DCFS] custody to engage in drug testing and treatment,

but he wholly refused to engage in those services. He was granted an opportunity to engage in reunification services thereafter but he only tried to do those services for four months before quitting. He has since had another fifteen months to engage in those services on his own. He has not submitted to any drug tests through [DCFS] or another testing program since November 2015.

¶11 Notwithstanding his stipulation in November 2015 that his reunification services should be terminated, Father now claims that the juvenile court erred in terminating reunification efforts so early in the case. Father's petition on appeal does not demonstrate why it would be error for the juvenile court to accept Father's stipulation to end reunifications efforts, which he made at the permanency hearing where he was represented by counsel. By stipulating that reunification efforts could be terminated, Father invited the very error he now claims that the juvenile court committed. "[W]here a party makes an affirmative representation encouraging the court to proceed without further consideration of an issue, an appellate court need not consider the party's objection to that action on appeal." *State v. Moa*, 2012 UT 28, ¶ 27, 282 P.3d 985. Father cannot demonstrate that the juvenile court erred in terminating reunification services in November 2015 based on Father's stipulation.

¶12 We therefore consider Father's arguments only insofar as he claims that DCFS failed to offer or provide reasonable reunification services. *See In re A.T.*, 2015 UT 41, ¶ 12, 353 P.3d 131 (stating that a parent may raise DCFS's failure to provide reasonable reunification services at the termination trial). Father acknowledges that reunification services are not a right, *see In re J.P.*, 2015 UT App 26, ¶ 4, 344 P.3d 162 (per curiam), and that the juvenile court may terminate reunification services at any time, *see* Utah Code Ann. § 78A-6-314(11)(b) (LexisNexis Supp. 2016). Nevertheless, he claims that DCFS should have made additional efforts to assist him by making alternate means available to him to complete his plan that would not interfere with his work

schedule. Father argues that DCFS is required to make a "fair and serious attempt to reunify a parent with a child prior to seeking to terminate parental rights." *See In re A.C.*, 2004 UT App 255, ¶ 14, 97 P.3d 706. He contends that he was not given a fair and serious attempt at reunification and that DCFS "gave up working with him instead of making alternative means available to him to complete his plan." Nowhere does Father address the fact that he stipulated to the termination of reunification services.

¶13   Furthermore, the juvenile court squarely addressed, and rejected, Father's argument that he was not given a fair opportunity to participate in services. The court noted that Father provided "no proof that he made any reasonable or real effort to work out any claimed conflict between his job and his treatment requirements," nor did he address the claimed conflict with the court. In sum, the juvenile court found that Father "was granted the opportunity to engage in reunification services," but he voluntarily chose to quit those services after four months. "When a foundation for the court's decision exists in the evidence, an appellate court may not engage in a reweighing of the evidence." *In re B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435. Because a foundation exists for the juvenile court's decision, we do not disturb it. Father has not otherwise challenged any of the findings of fact or conclusions of law pertaining to the best interest determination, including the findings made at the November 18, 2015 permanency hearing that the child could not be safely returned to Father's care.

¶14   Affirmed.

————————