**2024 UT App 114**

## THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF K.B.,
A PERSON UNDER EIGHTEEN YEARS OF AGE.

M.B.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Per Curiam Opinion
No. 20240136-CA
Filed August 8, 2024

Second District Juvenile Court, Farmington Department
The Honorable Sharon S. Sipes
No. 1202076

Colleen K. Coeberg, Attorney for Appellant

Sean D. Reyes and John M. Peterson, Attorneys
for Appellee

Martha Pierce, Guardian ad Litem

Before JUDGES GREGORY K. ORME, MICHELE M. CHRISTIANSEN
FORSTER and AMY J. OLIVER.

PER CURIAM:

¶1     M.B. (Mother) appeals the termination of her parental
rights in K.B. and K.B. (Children).

¶2     Mother asserts that the juvenile court's determination that
the Division of Child and Family Services (DCFS) made active
efforts to provide services to Mother was clearly erroneous.
Children are within the scope of the Indian Child Welfare Act
(ICWA). *See* 25 U.S.C. §§ 1901–1963. Under section 1912 of

ICWA, before terminating the parental rights of a parent of an Indian child, the juvenile court must determine that "active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." *Id.* § 1912(d). A juvenile court's determination regarding the provision of services is "a mixed question of fact and law." *In re A.C.*, 2004 UT App 255, ¶ 9, 97 P.3d 706 (quotation simplified). "[T]he determination of whether [the active efforts] standard has been met should be made on a case-by-case basis." *In re C.D.*, 2008 UT App 477, ¶ 35, 200 P.3d 194. "Accordingly, the juvenile court is afforded some discretion on this issue." *Id.* "We review the juvenile court's factual findings for clear error and its conclusions of law for correctness, affording the court some discretion in applying the law to the facts." *Id.* (quotation simplified).

¶3 Mother does not challenge any of the findings of fact underlying the juvenile court's determination that active efforts were made. Rather, she argues that the court's determination that DCFS made active efforts to provide services to Mother was not supported by the evidence. She also contends that the court improperly relied on expert testimony from the Colorado River Indian Tribes' (Tribe) ICWA expert (Tribe Representative).

¶4 Mother first argues that the juvenile court improperly relied on Tribe Representative's expert testimony. Tribe Representative testified that DCFS provided information regarding the case to Tribe, included Tribe Representative and Tribe counsel in regular meetings, accepted suggestions regarding the case, and provided appropriate services to Mother. Tribe Representative also stated that the services DCFS offered were essentially the same as Tribe would have provided. There were no other services identified from which Mother would have benefitted that were not offered. Tribe Representative opined that the services provided by DCFS constituted "active efforts."

¶5      Mother asserts that the juvenile court "simply adopted the ICWA expert's opinion regarding active efforts" when such expert testimony was not required. Although expert testimony regarding "active efforts" is not required, *see In re P.F.*, 2017 UT App 159, ¶ 32, 405 P.3d 755 (quotation simplified), the court may consider expert testimony on the issue, *see id.* ¶ 33. No objection was made to Tribe Representative's testimony. The court was entitled to consider the expert testimony as part of its analysis of whether DCFS made active efforts. *See id.* Furthermore, Mother's assertion that the court "simply adopted" Tribe Representative's opinion is incorrect. The court referred to the testimony as part of its analysis and found it to support the determination that DCFS made active efforts to provide remedial services.

¶6      Mother also argues that the juvenile court's finding is not supported by the evidence. Although Mother faults the court's analysis for not including "meticulous findings," she does not challenge here any of the more than two hundred findings of fact regarding the proceedings, including many specifically regarding the services provided in an effort to prevent the breakup of the family. The court's findings of fact included numerous findings regarding the services provided, follow up with Mother on issues, active communication with Tribe, Mother's compliance with some provisions of the service plan, and Mother's lack of compliance with other parts of the service plan. The findings support the juvenile court's analysis of the efforts made. Mother implies that the summary of facts in the analysis constitute the whole of the findings, which is inaccurate.

¶7      Although the juvenile court made numerous findings of fact that support its determination that DCFS made active efforts to provide services, Mother contends that other evidence should be weighed against the determination of active efforts. A finding of fact in parental termination proceedings will not be overturned unless it is against the clear weight of the evidence or the appellate court otherwise reaches a conviction that a mistake has been

made. *See In re S.Y.*, 2003 UT App 66, ¶ 11, 66 P.3d 601. The weight of the evidence in the record supports the juvenile court's finding that DCFS made active efforts.

¶8      Mother argues that the DCFS caseworker (Caseworker) should have done more in areas where Mother had not complied with the service plan. She contends that Caseworker should have consulted with Mother's criminal attorney to assist with Mental Health Court. However, Caseworker testified that DCFS has no control over Mental Health Court or compliance in criminal matters that are beyond the scope of the underlying proceeding. Caseworker also testified that there may have been some question about Mother's eligibility for Mental Health Court depending on the charges. Mother also asserts that Caseworker should have done more to get Mother to comply with a requirement to get a medication management assessment. Mother consistently declined to take medication, even after multiple discussions. Caseworker engaged in multiple discussions with Mother, but Caseworker also testified there is no mechanism to force a parent to take medication. Additionally, Caseworker followed up with Mother multiple times regarding releases and forms, but Caseworker testified she could not fill out forms for Mother. Overall, Mother resists responsibility for her own recalcitrance and seeks to attribute that responsibility to DCFS. But, the weight of the evidence, including the services provided by DCFS, Caseworker's regular communication and follow up with Mother and Tribe, and expert testimony from Tribe Representative, supports the juvenile court's finding that DCFS made active efforts to provide services to Mother.

¶9      Mother also asserts that the juvenile court improperly relied on hearsay to determine that Mother continued her criminal activity. Mother identifies an objection to particular testimony and challenges a specific finding of fact. However, the testimony and objection do not relate to the challenged finding.

¶10 Caseworker testified regarding Mother's continued criminal activity. Caseworker testified that Mother had been arrested twice since Caseworker had come onto the case in September 2022. Mother had been jailed for each arrest. Those arrests were supported by the criminal court dockets admitted as exhibits without objection. Caseworker also testified that the parents' (Parents) relationship was frequently discussed at team meetings. Parents both reported that they were no longer together. Caseworker requested police reports to monitor Parents' interactions with law enforcement. She received about fifteen reports from September 2022 to May 2023. Although Parents denied that they were together, Caseworker testified that several of the police reports involved both parents and were labeled as family disturbance or domestic violence interactions. Based on the police reports, Caseworker was concerned about Parents' relationship and their honesty. No objection was made to this testimony.

¶11 Caseworker also testified that she had concerns regarding whether Mother had internalized the information from services in which she had participated. Caseworker explained her concern by referring to the police reports she had seen that indicated domestic violence issues. It is this testimony to which an objection was made. Mother's counsel stated that the testimony was hearsay as to the content of the police reports. The court overruled the objection because the court determined that the testimony was not offered for the truth of matter of the content of the police reports. Rather, the testimony provided the rationale for Caseworker's continued concerns about Mother.

¶12 On appeal, Mother asserts that the juvenile court used the challenged testimony as affirmative evidence of domestic violence. She specifically challenges finding of fact number ten: "On January 16, 2022, [Mother] was arrested after police responded to a report of domestic violence at [Parents'] apartment. [Mother] was released with a jail release no contact

order from the district court. On January 17, 2022, [Mother] was arrested for violating that order." However, the challenged testimony and police reports involve a time period well after January 2022. The challenged finding was not based on the identified testimony. Furthermore, there is no finding of fact that is specifically based on the identified testimony.[1]

¶13 To the extent that Mother contends the challenged finding of fact is unsupported because it is from an unproven petition, she is partially correct. The fact of Mother's arrest in January 2022 and the resulting removal of Children are established through testimony. The details that the police responded to a report of domestic violence and that Mother subsequently was arrested again for violating a no contact order appear not to be independently supported in the record on appeal.

¶14 Mother contends that this unsupported finding of fact affected multiple grounds for termination. The juvenile court referred to the January 2022 arrest and domestic violence in a few, but not all, of the multiple grounds for termination found by the court. However, a finding of any single ground is sufficient to support the termination of parental rights. Utah Code § 80-4-301(1) (providing "the juvenile court may terminate all parental

---

1. Mother asserts that inadmissible hearsay led to the court's finding regarding "inconsistencies between the parents' reports of their no contact and numerous police reports of ongoing domestic violence between the parents." This misstates the finding. The complete finding related to discussions at family team meetings: "At family team meetings, the relationship between the parents was discussed to address the inconsistencies between the parents' reports of their no contact and numerous police reports of ongoing domestic violence between the parents." As noted above, no objection was made to Caseworker's testimony regarding the meetings and police reports obtained to monitor Parents' relationship.

rights with respect to the parent if the juvenile court finds any one of the" listed grounds for termination). Because the juvenile court found grounds for termination that did not rely on the challenged finding, any reference to the challenged finding is harmless error. The independent grounds are sufficient to support the termination of Mother's parental rights.

¶15     Accordingly, the termination of Mother's parental rights is affirmed.

──────────