J-E01005-19

2019 PA Super 281


| IN RE: ADOPTION OF K.M.G. | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: T.L.G., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 580 WDA 2018 |

Appeal from the Decree March 5, 2018
In the Court of Common Pleas of McKean County Orphans' Court at
No(s):  42-17-0239


| IN RE: ADOPTION OF: A.M.G. | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: T.L.G., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 581 WDA 2018 |

Appeal from the Decree March 5, 2018
In the Court of Common Pleas of McKean County Orphans' Court at
No(s):  No. 42-17-0240


| IN RE: ADOPTION OF S.A.G. | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: T.L.G., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 582 WDA 2018 |

Appeal from the Decree March 5, 2018
In the Court of Common Pleas of McKean County Orphans' Court at
No(s):  No. 42-17-0241


| IN RE: ADOPTION OF J.C.C. | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |

APPEAL OF: T.L.G., MOTHER  : 
                            : 
                            : 
                            : 
                            : 
                            : 
                            : 
                            :    No. 583 WDA 2018

Appeal from the Decree March 5, 2018
In the Court of Common Pleas of McKean County Orphans' Court at
No(s):  42-17-0242

BEFORE:  PANELLA, P.J., BENDER, P.J.E., LAZARUS, J., OLSON, J., DUBOW,
         J., KUNSELMAN, J., NICHOLS, J., MURRAY, J., and McLAUGHLIN,
         J.

OPINION BY DUBOW, J.:                          **FILED SEPTEMBER 13, 2019**

In these consolidated appeals, Appellant, T.L.G. ("Mother"), appeals from the Decrees that involuntarily terminated her parental rights to her four minor children ("the Children").  This Court certified this case for *en banc* review to determine whether, in reviewing involuntary termination of parental rights decisions, this Court has the obligation to review *sua sponte* whether the Guardian *ad Litem* ("GAL") had a conflict.

We find that we do not have the authority to address the conflict issue *sua sponte*.  In so holding, we overrule **In re Adoption of T.M.L.M.**, 184 A.3d 585 (Pa. Super. 2018).[1]  We also affirm the orphans' court order involuntarily terminating Mother's parental rights.

---

[1] "It is well settled that this Court, sitting *en banc*, may overrule the decision of a three-judge panel of this Court." **Commonwealth v. Morris**, 958 A.2d 569, 580 n.2 (Pa. Super. 2008) (citation omitted).

- 2 -

On January 4, 2019, this Court certified this case for *en banc* review. On January 4, 2019, this court certified this case for *en banc* review of the following issues, slightly reframed for clarity:

> 1. Is it mandatory that the Superior Court, in an appeal from an involuntary termination decision, review *sua sponte* whether the child's legal counsel and/or guardian *ad litem* ["GAL"] properly represented the child's legal interest, particularly in regard to whether there was a conflict between GAL's representation and the child's stated preference?
>
> 2. When a party properly raises the issue of whether a GAL has a conflict before the orphans' court, what is the standard of review that Superior Court must use to review the decision of the trial court?
>
> 3. When a party raises the issue that the GAL has an undisclosed conflict for the first time on appeal before Superior Court, must Superior Court remand the case to the orphans' court to determine whether a conflict exists or may Superior Court make its own determination from the certified record?
>
> 4. What factors must the orphans' court consider and findings the orphans' court must make in determining whether the child's preference differs from the child's best interests and thus, the GAL has a conflict?

The parties have filed supplemental Briefs addressing these issues.

## SUPERIOR COURT'S AUTHORITY TO RAISE *SUA SPONTE* AN UNDISCLOSED CONFLICT OF A GAL

In a dependency case, the trial court appoints a GAL who is "to represent the legal interests and the best interests of the child." 42 Pa.C.S. § 6311(a); Pa.R.J.C.P. 1151(A). There will be times when the child's best interest differs from the child's stated preferences. In such instances, the GAL has the

professional obligation to notify the court of a conflict. ***See*** Rule of Professional Conduct 1.7. When the GAL notifies the court of a conflict, the court will appoint a separate attorney to represent the child's stated interest. ***See*** Pa.R.J.C.P. 1154 cmt.

Since the parties in a dependency proceeding are usually identical to those in a hearing on a petition to involuntarily terminate parental rights, the orphans' court often appoints the dependency GAL to represent the child during the termination proceedings. This is pursuant to Section 2313 of the Adoption Act that requires the court to appoint "counsel" to represent the child at the involuntary termination hearing. 23 Pa.C.S. 2313(a). There has been much litigation recently about the term "counsel" and those instances in which a GAL has a conflict and may not serve as "counsel."[2] ***See, e.g., In re: Adoption of L.B.M.***, 161 A.3d 172 (Pa. 2017); ***In re: T.S.***, 192 A.3d 1080 (Pa. 2018).

We are not defining today those situations in which a GAL has a conflict, but rather the procedural issue of whether Superior Court must *sua sponte* review every termination case to make an independent determination of whether a GAL has a conflict.

---

[2] In a termination hearing in which the GAL is advocating that it is in the child's best interest for the orphans' court to grant the termination petition, it is typically a parent who will raise the issue that the GAL has a conflict. The parent will argue that there is a conflict because the parent believes that the child does not want to have the rights of his parent terminated and thus, the child opposes a petition to terminate parental rights.

A three-judge panel of this Court, in **T.M.L.M.**, held that Superior Court must *sua sponte* make an independent determination of whether a GAL has a conflict in every involuntary termination case.  **T.M.L.M.**, 184 A.3d at 590.  In that case, the orphans' court stated on the record that the appointment of the GAL for the involuntary termination hearing complied with **L.B.M.** and, thus, Section 2313(a).  **Id.** at 588.  No party on appeal contested this finding of the orphans' court.  Yet, the panel in **T.M.L.M.** *sua sponte* reviewed the record, found that the GAL may have a conflict, reversed the order terminating the mother's parental rights, and remanded the case for further proceedings.  **Id**. at 590.  We now overrule **T.M.L.M** because the Superior Court only has the authority to raise *sua sponte* the issue of whether the lower court appointed **any** counsel for the child, and not the authority to delve into the quality of the representation.

It is well established that an appellate court may not raise an issue *sua sponte*, except when the issue addresses the subject-matter jurisdiction of the court.  **In re Angeles Roca First Judicial Dist. Philadelphia Cty.**, 173 A.3d 1176, 1197 (Pa. 2017) ("It is foundational that jurisdictional questions may be raised *sua sponte*."); **Commonwealth v. Parker**, 173 A.3d 294, 296 (Pa. Super. 2017) ("A court may consider the issue of jurisdiction *sua sponte*.").

There are, however, a few discrete, limited non-jurisdictional issues that the Supreme Court has authorized the lower courts to raise *sua sponte*, such as waiver as a result of various briefing defects.  **See**, **e.g.**, **Commonwealth v. Passaro**, 476 A.2d 346, 348 (Pa. 1984) (describing Pennsylvania's practice

of dismissing pending appeals of escaped prisoners, which the court may do *sua sponte*); ***Berg v. Nationwide Mut. Ins. Co., Inc.***, 6 A.3d 1002, 1015 (Pa. 2010) ("failure to include issues in a Rule 1925(b) statement resulted in 'automatic' waiver, which could be found *sua sponte* by courts.").

Likewise, the Superior Court has found that it has the authority to consider *sua sponte* the failure of the trial court to conduct a ***Grazier*** hearing to ensure that a defendant has knowingly and voluntarily waived his right to counsel for his first PCRA petition. ***Commonwealth v. Stossel***, 17 A.3d 1286, 1290 (Pa. Super. 2011). This Court based this conclusion on the fact that the PCRA statute entitles an indigent defendant to counsel for his first PCRA petition, and our Supreme Court has acknowledged that "PCRA relief cannot stand unless the petitioner was afforded the assistance of counsel." ***Id.*** (quoting from ***Commonwealth v. Albrecht***, 720 A.2d 693, 699 (Pa. 1998)).

Similarly, when the orphans' court fails to appoint **any** counsel for a child in an involuntary termination hearing, Superior Court may raise this issue *sua sponte*. ***In re: K.J.H.***, 180 A.3d 411, 413 (Pa. Super. 2018). In ***K.J.H.***, this Court reasoned that since the child had no counsel at the termination hearing and Section 2313(a) requires the appointment of counsel, Superior Court should raise the issue *sua sponte* in order to protect this statutorily-mandated right of the child. ***Id.***

In contrast, however, our Supreme Court has specifically prohibited the Superior and Commonwealth Courts from deciding certain issues *sua sponte*.

For instance, the Superior Court cannot address constitutional issues *sua sponte*. ***See Wiegand v. Wiegand***, 337 A.2d 256, 257 (Pa. 1975) (criticizing the Superior Court's *sua sponte* consideration of a constitutional issue, which "exceeded its proper appellate function of deciding controversies presented to it.").

Also, the intermediate appellate courts may not consider *sua sponte* standing, recusal issues, or the need to file a dependency petition. ***See In re Nomination Petition of deYoung***, 903 A.2d 1164, 1168 (Pa. 2006) (noting that our Supreme Court "has consistently held that a court is prohibited from raising the issue of standing *sua sponte*. Whether a party has standing to maintain an action is not a jurisdictional question."); ***Commonwealth v. Whitmore***, 912 A.2d 827, 833 (Pa. 2006) (concluding that the Superior Court erred when it *sua sponte* removed the trial judge where recusal had never been raised by the parties). ***See also Fallaro v. Yeager***, 528 A.2d 222, 228 (Pa. Super. 1987) (finding that a court may not make a *sua sponte* determination of dependency in a custody action where no dependency petition has been filed or in an action under the Child Protective Services Law).

The Supreme Court disfavors the intermediate appellate court's consideration of issues *sua sponte* because it is more important to respect orderly judicial decision-making, afford counsel the opportunity to brief and argue issues, permit the court to benefit from counsel's advocacy, and uphold issue preservation rules. ***Wiegand***, ***supra***.

Although our Supreme Court has authorized the appellate courts to raise *sua sponte* the issues above, it has not authorized the Superior Court to raise *sua sponte* the issue of whether a GAL representing a child in an involuntary termination hearing has a conflict in such representation. In fact, the most recent Pennsylvania Supreme Court cases addressing the child's statutory right to legal counsel, as opposed to a GAL, in an involuntary termination hearing pursuant to 23 Pa.C.S. § 2313(a) do not involve situations in which thre Superior Court raised the issue *sua sponte*.

In **L.B.M.**, the parents raised the issue of a conflict with the orphans' court and appealed the issue to Superior Court. **L.B.M.**, 161 A.3d at 176-77. Similarly, in **T.S.**, the parents raised the issue of a conflict in Superior Court. **T.S.**, 192 A.3d at 1085. In both cases, because the parents raised the conflict issue before either the orphans' court or Superior Court, there was no reason for the Supreme Court to address whether Superior Court can raise the conflict issue *sua sponte*. Thus, at this point, the Supreme Court has not authorized Superior Court to raise the conflict issue *sua sponte*.

In this case, the orphans' court provided the parties with an opportunity to raise the issue of whether the GAL had a conflict, and no party responded. In particular, the orphans' court entered an order appointing the GAL who had represented the Children in the dependency proceeding to represent the Children in the termination hearing, finding that, pursuant to **In re: D.L.B.**, 166 A.3d 322 (Pa. Super. 2017), the GAL, "may adequately represent both [Children's] best interests and legal interests without conflict." Order, 1/8/18.

The orphans' court then gave each party 10 days to object to the "dual representation[.]" *Id.* No party objected.

Applying the current precedent to these facts, Superior Court has no authority to raise *sua sponte* the issue of whether a GAL has a conflict. Rather, as stated previously, this Court only has the authority to raise *sua sponte* the trial court's failure to appoint **any** counsel for the Child. *See K.J.H.*, 180 A.3d at 413. In this case, the orphans' court did appoint counsel, the GAL, and we have no authority to delve into the quality of the GAL's representation. The Supreme Court has not authorized us to do so.

Moreover, we do not see the need to do so because numerous protections exist to ensure that the GAL does not have a conflict at an involuntary termination hearing. First, a GAL has a professional responsibility to notify the court if there is a conflict so that the court may appoint separate counsel. *See* Rule of Professional Responsibility 1.7. Second, any party has standing to raise the issue of a potential conflict before the orphans' court or Superior Court. *See, e.g., L.B.M.*, 161 A.3d at 176-77; *T.S.*, 192 A.3d at 1085. Finally, orphans' court, as in *T.M.L.M.* and this case, often decides this issue. Thus, there are many mechanisms to protect a child's right to counsel who does not have a conflict at a termination hearing.

Accordingly, we overrule *T.M.L.M.*, and hold that this Court does **not** have the authority review *sua sponte* whether a conflict existed between counsel's representation and the child's stated preference in an involuntary termination of parental rights proceeding. Rather, pursuant to *K.J.H.*, this

Court's authority is limited to raising *sua sponte* the issue of whether the orphans' court violated Section 2313(a) by failing to appoint **any** counsel for the Child in a termination hearing. ***K.J.H.***, 180 A.3d at 413.

We next address the second issue certified for *en banc* review and consider the standard of review that the Superior Court must apply when reviewing an orphans' court decision that the GAL does not have a conflict and, thus, the orphans' court does not need to appoint a separate attorney to represent the child's stated preference at a termination hearing. Since the determination that a GAL does not have a conflict is a factual one, we hold that we should use the same standard of review when reviewing any factual determination of the orphans' court and give great deference to those factual findings.

It is well settled that when we review an order granting or denying termination of parental rights, "we accept factual findings and credibility determinations supported by the record, and we assess whether the common pleas court abused its discretion or committed an error of law." ***T.S.***, 192 A.3d at 1087. We may not reverse merely because the record could support a different result. ***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013). We give great deference to the orphans' courts "that often have first-hand observations of the parties spanning multiple hearings." ***Id.*** Moreover, the orphans' court "is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." ***In re M.G.***, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation

- 10 -

omitted). Thus, we must give great deference to orphans' court credibility determinations and weight that the orphans' court places on the evidence regarding a potential conflict.

The third issue certified is the standard of review the Superior Court must use when a party fails to raise the conflict issue before the orphans' court and raises it for the first time on appeal. In such cases, the Superior Court should review the record to determine if the record is clear and undisputed about whether the child is able to express "a subjective, articulable preference" and if so, whether the child's preferred outcome differed from the child's best interest. **See T.S.**, 192 A.3d at 1089.

Our final question that we certified for *en banc* review addresses the best practices for the orphans' court in determining whether the GAL has a conflict; *i.e.*, for a child who can express "a subjective, articulable preference," whether the child's best interests differs from the child's preferred outcome. **Id.** In other words, the issue is whether the child's preferred outcome is that the orphans' court deny the involuntary termination petition while the GAL advocates that it is in the child's best interest for the orphans' court to grant the petition. The orphans' court should first determine whether the GAL has spoken with the child about the child's preferences regarding the termination petition and whether such inquiry results in the GAL having a conflict. If the GAL represents to the court that he or she has made the inquiry and there is not a conflict, the orphans' court should permit any other party to present evidence to support that party's position that the GAL has a conflict. If the

- 11 -

orphans' court at that point decides that it is necessary to question the child, the orphans' court should do so in the manner that is least difficult for the child. If it is possible, however, to obtain the information from a mental health provider who is working with the child, we would suggest that the orphans' court hear that testimony in lieu of questioning the child.

**MOTHER'S ISSUES ON APPEAL REGARDING INVOLUNTARY TERMINATION OF HER PARENTAL RIGHTS**

Having determined that Superior Court is not authorized to raise *sua sponte* the issue of whether the GAL had a conflict that it did not disclose, we will address the merits of Mother's appeal that the orphans' court erroneously granted the petition to terminate her parental rights involuntarily.

McKean County Children and Youth Services ("CYS") became involved with the Children because of Mother's inability to address the Children's significant medical needs, extensive dental problems, ongoing head lice and serious bowel disease. Also, Mother was unable to ensure that the Children attended school.

Additionally, Mother was living in subsidized housing with her paramour, who is a Tier II sex offender, and his children. One of the paramour's children sexually abused one of Mother's children; yet Mother continued to live with the paramour, attempting to hide it from CYS. Mother's relationship with her

paramour has also jeopardized her ability to remain in subsidized housing for the Children. Memorandum and Order, filed 1/25/19 at 11-12.[3]

CYS provided numerous services to Mother to alleviate the issues that led to the adjudication of dependency and the subsequent placement of Children in kinship care. Over two years after the trial court adjudicated Children dependent, however, CYS filed a Petition for Involuntary Termination of Parental Rights ("TPR Petition") pursuant to § 2511(a)(1), (2), (5), and (8) and (b) of the Adoption Act.

On February 12, 2018, the orphans' court held a hearing on CYS' TPR Petition. On March 5, 2018, the orphans' court granted the TPR Petition and involuntarily terminated Mother's parental rights to Children.[4]

Mother timely appealed. Both Mother and the orphans' court complied with Pa.R.A.P. 1925.

Mother raises the following issues on appeal:

1. Whether the [orphans'] court erred in finding that [CYS] had proven by clear and convincing evidence that grounds for the involuntary termination of [Mother's] parental rights existed when [Mother]: was substantially in compliance with the [CYS]'s reunification plan; had made efforts to correct the identified problems which led to the placement of [Children]; when no evidence as submitted that [Mother] failed or refused

---

[3] The orphans' court filed four nearly identical Memorandum and Orders, one for each child, only changing the individual child's name when appropriate. For ease of disposition, we will only cite to one Memorandum and Order.

[4] Father, who is not a subject to this appeal, filed a Petition to Voluntarily Relinquish his Parental Rights to Children, which the orphans' court granted on April 5, 2018.

to perform parental duties, and; when [CYS] did not otherwise prove grounds existed to terminate [Mother]'s parental rights?

2. Whether the [orphans'] court erred in not giving primary consideration to the effect of this termination on the developmental and emotional needs and welfare of [Child] pursuant to 23 Pa.C.S. [§] 2511(b).

Mother's Brief at 11.

When we review a decision of orphans' court to terminate parental rights, we must accept the findings of fact and credibility determinations of the orphans' court if the record supports them. *T.S.M.*, 71 A.3d at 267. "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id*. (citation omitted). "Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand." *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (citation omitted). We may not reverse merely because the record could support a different result. *T.S.M.*, 71 A.3d at 267. We give great deference to the trial courts "that often have first-hand observations of the parties spanning multiple hearings." *Id.* Moreover, "[t]he trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *M.G.*, 855 A.2d at 73-74 (citation omitted).

In this case, the orphans' court found that CYS met its burden of proof under 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b); we need only agree with its decision as to any one subsection of Section 2511(a) and subsection (b) in order to affirm the termination of parental rights. *See In re B.L.W.,*

- 14 -

843 A.2d 380, 384 (Pa. Super. 2004) (citation omitted). For the following reasons, we conclude that the orphans' court correctly determined that CYS met its burden of proof under 23 Pa.C.S. § 2511(a)(2) and (b).

**Termination Pursuant to Section 2511(a)(2)**

We first conclude that the orphans' court properly exercised its discretion by terminating Mother's parental rights pursuant to Section 2511(a)(2).

In order to terminate parental rights pursuant to Section 2511(a)(2), the moving party must prove by clear and convicting evidence:

(1) the parent's repeated and continued incapacity, abuse, neglect or refusal;

(2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and

(3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa. Super. 2015).

The grounds for termination under Section 2511(a)(2) are not limited to a parent's affirmative misconduct, but rather a parental incapacity that a parent cannot remedy. *In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010).

Parents have an "affirmative duty" to work towards the return of their children. *In re Julissa O.*, 746 A.2d 1137, 1141 (Pa. Super. 2000). This

"affirmative duty," at a minimum, requires a parent to cooperate with the Child and Youth Agencies and complete the rehabilitative services necessary so that the parent can perform his parental duties and responsibilities. *Id.*

Additionally, the statute does not provide a parent with an unlimited period time to overcome the incapacity that led to the adjudication of the child; rather, a parent must make a diligent effort towards overcoming the incapacity so that the parent can assume his parental duties within a reasonable period of time after the adjudication of dependency. *Z.P.*, 994 A.2d at 1117.

This Court has explained, Section 2511(a)(2) does not focus on a parent's refusal or failure to perform parental duties, "but instead emphasizes the child's present and future need for essential parental care, control or subsistence necessary for his physical or mental well-being." *In re E.A.P.*, 944 A.2d 79, 82 (Pa. Super. Ct. 2008) (internal quotation marks omitted). Therefore, when addressing the requirements of Subsection (a)(2), the orphans' court should not ignore a child's need "for a stable home and **strong, continuous parental ties**[.]" *Id.* (emphasis in original). This factor is particularly important when the "disruption of the family has already occurred and there is no reasonable prospect for reuniting it[.]" *Id.* (citation omitted).

Applying these principles, the orphans' court concluded that Mother's continued incapacity to parent the Children caused them to be without essential parental care, control or subsistence. The orphans' court first found

that Mother, even with the support of CYS, was not able to address consistently the Children's serious medical needs. This failure harmed the Children:

> [An] older sibling suffered with serious bowel condition/symptoms that continued much longer than they had to due to lack of treatment. The [C]hildren had many teeth pulled and extensive pain and will continue to have difficulty and complications from the lack of appropriate initial dental hygiene and follow through. The [C]hildren have suffered from the frequent lice infestations including an older child bullied at school.

Memorandum and Order at 11.

The court also found that Mother chose her relationship with her paramour "over the safety of her biological children." *Id*. at 12. As discussed above, Mother's paramour is a sex offender, which precludes him from having unsupervised contact with children. Mother permitted such unsupervised contact and one of her paramour's children sexually assaulted one of the Children. *Id.* at 4. Even after this occurred, Mother continued to live with her paramour and his children. *Id.* at 12*.*

Also, CYS assisted Mother in obtaining subsidized housing. *Id.* at 11. Mother's paramour, however, is not permitted to live there. Nevertheless, Mother continues to live there with her paramour and his children, even though it is likely that she will lose her housing and have no housing for her Children:

> Mother was provided assistance for housing but she utilized this assistance to provide a home for her paramour and his children. She has had a longtime relationship with [her paramour], a Tier II sex offender, and this relationship will continue. Mother will

- 17 -

> likely lose her housing because she is allowing [her paramour] and
> his children to reside there.

*Id*. at 12.

Additionally, CYS made reasonable efforts to assist Mother so that the orphans' court could return the Children to her. CYS assisted Mother in obtaining housing, mental health services, parenting classes and attending the Children's medical and dental appointments. Mother, however, failed to take advantage of these services. Memorandum and Order, p. 3-6. Also, Mother did not consistently visit with the Children. *Id.*

Finally, the Children's lives "have dramatically improved" since CYS placed them with their kinship parents. *Id.* at 6. Their hygiene, dental and medical conditions, and behavior have all improved. *Id.*

Our review of the record supports the findings of the orphans' court and we agree that Mother lacks the continued capacity to care for the Children because she, even with the assistance of CYS, is unable to meet the Children's significant medical and dental issues. She also is unable to place her relationship with her Children ahead of her relationship with her paramour, who poses a significant threat to the Children. It is also reasonable for the orphans' court to conclude from this evidence that Mother will not overcome these issues in the near future.

Moreover, the Children's mental and physical health have improved dramatically since CYS placed them with the kinship provider. Thus, we agree with the orphans' court that CYS met its burden under Section 2511(a)(2).

Mother argues that the orphans' court erred because she was substantially in compliance with the reunification plan and made efforts to correct the identified problems that led to the placement of Children. Mother's Br. at 21. The orphans' Court, however, chose to place weight on the evidence that Mother was not in compliance with the reunification plan because she failed to consistently attend mental health treatment, visit with the Children regularly, and dependably attend the Children's medical and dental appointments. Memorandum and Order at 3-6, 11-12. Since we will not re-weigh the evidence, this argument fails.

Mother also argues that there was no evidence that Mother failed or refused to perform parental duties. Mother's Br. at 11. Once again, as we have already discussed, the orphans' court found that Mother, in fact, failed and refused to perform parental duties. Since the record supports these findings, this argument fails as well.

In sum, we find that record supports the finding of orphans' court that Mother demonstrated a continued incapacity to parent the Children and Mother was unwilling or unable to remedy the incapacity in the near future. Thus, we conclude that orphans' court did not abuse its discretion when it concluded that CYS met its burden pursuant to Section 2511(a)(2).

**Termination Pursuant to Section 2511(b)**

In her last issue, Mother contends that the orphans' court abused its discretion when it determined that it was in Children's best interest to

terminate Mother's parental rights pursuant to Section 2511(b). Mother's Br. at 21. We find, however, that the evidence supports this conclusion of the orphans' court.

With respect to Section 2511(b), our analysis focuses on the effect that terminating the parental bond will have on the child. In particular, we review whether "termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010). It is well settled that "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted).

One major aspect of the "needs and welfare" analysis concerns the nature and status of the emotional bond that the child has with the parent, "with close attention paid to the effect on the child of permanently severing any such bond." *In re Adoption of N.N.H.*, 197 A.3d 777, 783 (Pa Super. 2018) (citation omitted). Moreover, the fact that a child has a bond with a parent does not preclude the termination of parental rights. *In re A.D.*, 93 A.3d 888, 897 (Pa. Super. 2014) (citation omitted). Rather, the orphans' court must examine the depth of the bond to determine whether the bond is so meaningful to the child that its termination would destroy an existing, necessary and beneficial relationship. *Id.* at 898.

In addition to evaluating whether the child's bond to the parent is meaningful, the orphans' court can "equally emphasize the **safety** needs of the child, particularly in cases involving physical or sexual abuse, severe child neglect or abandonment, or children with special needs." *In re K.Z.S.*, 946 A.2d 753, 763 (Pa. Super. 2008) (emphasis in original). Finally, the orphans' court should also consider the child's relationship with his foster parents and whether the foster parent provides to the child "the intangibles such as [] love, comfort, security, and stability." *Id.*

Finally, Section 2511(b) provides, "the rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent." 23 Pa.C.S. § 2511(b).

In this case, the orphans' court acknowledged that Children have a bond with Mother, but found that "this bond has been harmful at times as Mother has also missed visits and declined to have more contact even though the opportunity existed. This has resulted in anguish to the [C]hildren when they expect to see Mother and that doesn't occur." Memorandum and Order at 11.

Further, the orphans' court emphasized that Mother, who lives with her paramour and his children, has chosen "her relationship with [her paramour] over the safety of her biological children." *Id.* at 12. This choice of Mother's has already endangered one of the Children who was sexually assaulted by one of her boyfriend's children. *Id.* Since Mother's boyfriend is a registered

sex offender, Mother will most likely lose her subsidized housing. The orphans' court also concluded that "there will be no change in the future." *Id.*

Thus, Mother has demonstrated that she will not provide safety, security and stability for the Children and thus, any expectation that the Children may have that Mother will protect them will be frustrated.

In contrast, the Children are "doing very well in the [] kinship home." *Id.* at 12. The kinship parents ensure that the Children receive the necessary medical and dental care, provide stability for the Children and are working with services providers. *Id.*

Based on these factors, the orphans' court concluded that terminating Mother's parental right would best serve Children's "developmental, physical and emotional needs and welfare." *Id*.

Our review of the record supports the factual findings of the orphans' and we agree that with the conclusion of orphans' court that terminating Mother's parental rights is in the best interest of the Children.

Mother avers that Mother and Children enjoy a close bond and CYS failed to present evidence that severing that bond would be in Children's best interest. Mother's Br. at 29. Mother argues that the evidence presented suggests that she has frequent contact with Children, a good relationship with Children, and Children are always happy to see her. *Id.* at 29. Mother contends that the medical, lice, and housing issues were due to poverty and insurance issues out of her control. *Id.* The record belies these claims.

CYS offered services to Mother for eighteen months prior to removing Children from her care, including assistance with obtaining mental health services, scheduling medical appointments and transporting Mother and Children to them, and mitigating the Children's lice issues. Mother did not fully take advantage of the services. *Id.* at 2-4.

Additionally, Mother's possible lack of housing is due to her own actions. CYS assisted Mother in obtaining subsidizing housing. Mother, however, chose to allow her paramour, who is a sex offender and not permitted to live in subsidized housing, to live there. If Mother loses housing, it is not because of Mother's poverty, but because she chose to allow her paramour to live in the housing.

Accordingly, the record reflects that Mother's medical, lice, and housing issues were not the result of poverty out of her control, but, rather, her own actions. Accordingly, Mother's argument lacks merit.

**CONCLUSION**

In sum, for the reasons stated above, we overrule **T.M.L.M.***,* and hold that this Court does **not** have the authority to review *sua sponte* whether a conflict existed between counsel's representation and the child's stated preference in an involuntarily termination of parental rights proceeding. In addition, our review of the record reveals that the orphans' court properly found that CYS provided clear and convincing evidence to support the

termination of Mother's parental rights pursuant to 23 Pa.C.S. §§ 2511(a)(2) and (b).

Decree affirmed.

President Judge Panella, and Judges Lazarus, and Murray join this Opinion.

Judge Nichols concurs in the result.

Judge Olson files a Concurring/Dissenting Opinion in which Judge Nichols joins.

President Judge Emeritus Bender files a Dissenting Opinion in which Judges Kunselman and McLaughlin join.


Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date:  9/13/2019